### No. 12,518.

H. & C. NEWMAN *vs.* BAER & LEVY—CRAWFORD, JENKINS & BOOTH ET ALS., INTERVENORS.

ON MOTION TO DISMISS APPEAL.—Plaintiffs' debt and attachment were placed at issue by the averments of the interventions. This debt exceeded the amount necessary to give this court jurisdiction. Therefore, as regards the plaintiff the suit *and all of its incidents* are subject to an appeal here. It matters not that the sum claimed by intervenors is below the appealable amount.

ON THE MERITS.—An insolvent debtor can not give in payment to one creditor, to the prejudice of the other creditors, any other thing than the sum of money due.

No distinction is recognized between a voluntary conveyance of property in fraud of creditors and such an alienation disguised under the forms of judicial proceedings.

Any machination or contrivance by which a fraudulent preference is sought to be
    given will be set aside and annulled.
Neither the law nor the courts are to be used as instruments to work injustice.
    To attempt this is to aggravate the offending.
An attachment instigated by a debtor to give a favored creditor an advantage will
    be declared void and of no effect as to complaining creditors, but maintained
    as between the fraudulent debtor and favored creditor.
Great weight given to opinion of trial judge, who saw and heard the witnesses, in
    determining questions of fact tending to prove fraud.

APPEAL from the Second Judicial District Court for the Parish of
    Bienville.    *Watkins*, J.

---

*Percy Roberts & Boatner* and *E. T. Lamkin* for Plaintiffs, Appellants.

---

*Dormon, Reynolds & Dormon, J. W. Holbert, L. K. Watkins* and *W.
U. Richardson* for Intervenors, Appellees.

---

Argued and submitted June 1, 1897.
Opinion handed down December 13, 1897.
Rehearing refused March 7, 1898.

---

The opinion of the court was delivered by

BLANCHARD, J.  Plaintiffs sued for ten thousand four hundred and
ninety-one dollars and nineteen cents on open accounts and notes.
Alleging the insolvency of defendants, and averring the statutory
grounds embodied in Secs. 4 and 5 of C. P. 240, they caused defend-
ants' property and effects to be attached and garnishment process to
issue to a number of their debtors.

Defendants were merchants and owed various other creditors:
Crawford, Jenkins &. Booth, claiming a debt of six hundred and
seventy-eight dollars and ninety-three cents, intervened, contesting
the attachment, alleging the same to be fraudulent and collusive,
intended to defeat the creditors of defendants and to aid the latter
in fraudulently disposing of and placing their property beyond the
reach of their creditors.   They denied that any indebtedness existed
on part of defendants to plaintiffs, and averred, in substance that
the whole proceeding on part of plaintiffs was a fraudulent device,
the result of a collusive agreement between them and defendants.

Theirs was a revocatory action, set up by intervention, seeking to

annul acts of their debtor in alleged collusion with others, done in fraud of their rights.

They prayed judgment setting aside and annulling the attachment, and decreeing the debt declared on to be fraudulent and fictitious.

These parties had previously, but subsequent to plaintiffs, in a separate suit in the same court, sued out writs of attachment against defendants, under which they had caused to be seized the same property previously seized by plaintiffs. They had prosecuted their suit to judgment, decreeing recovery of amount claimed and sustaining their attachment, with recognition of privilege as attaching creditors.

Eight other creditors of defendants, who had likewise first sued separately and attached the same property, filed similar interventions, making substantially the same allegations and asking decrees similar to that prayed for by Crawford, Jenkins & Booth.

The largest of the claims set up in the interventions was seven hundred and nineteen dollars and thirty cents; the smallest one hundred and ninety dollars and twenty-seven cents. They aggregated three thousand five hundred and twenty-two dollars and twenty-nine cents.

Plaintiffs answered the interventions, denying the fraud and conspiracy charged, declaring the good faith of their attachment and averring that the same was based on a valid indebtedness for the whole amount claimed.

Defendants answered the interventions denying the allegations of fraud, conspiracy and collusion.

They filed no answer to plaintiff's demand, nor to the original suits of the intervenors.

There was judgment in plaintiffs favor against defendants for the amount sued for, sustaining their attachment, recognizing their privilege as attacking creditors and ordering the property seized to be sold to satisfy their demand, except in so far as the intervenors were concerned, who were, in the same decree, awarded judgment against plaintiffs, annulling and setting aside the attachment in so far as it affects the rights of the intervenors, and adjudging the latter to be paid by preference out of the proceeds of the attached property in the order of the levy of their respective writs.

The effect of this judgment is to settle first out of the proceeds of

the property the claims of the intervenors, and awarding to plaintiffs on their judgment the remainder.

The property attached was estimated in the sheriff's inventory at ten thousand one hundred and eighty-two dollars and eighty-nine cents.

Plaintiffs appeal, and in this court are met by motions to dismiss filed on behalf of each intervenor, on the ground that their respective judgments, ordering payment by preference out of the funds n the sheriff's hands are each below the appealable jurisdiction of this court

### ON MOTION TO DISMISS.

The question presented by the motions must be considered settled adversely to the contention of intervenors.

Plaintiffs' debt and attachment were placed at issue by the averments of the interventions and thus constitute the matter in controversy. The amount claimed by plaintiffs at the institution of the suit imparts to it its character in relation to its susceptibility of being the object of an appeal—that is to say, so far as regards the plaintiffs, all the *incidents* in the suit are subject to an appeal. Hart vs. Lodwick, 8 La. 167; Lumber and Shingle Company vs. Hart, 48 An. 1035; Picard & Weil vs. Wade, 30 An. 625; 31 An. 452; 24 An. 442; 21 An. 366; 2 An. 189.

The motion to dismiss is denied.

### ON THE MERITS.

At the opening of the business season in the fall of 1896, defendants, Baer & Levy, found themselves insolvent.

The crops of the year in the section of country in which they did business had failed and the prospect for collection of outstanding accounts was poor indeed. Realizing their situation and the utter inability to meet their obligations, they, for reasons unnecessary to inquire into, made up their minds to favor H. & C. Newman, plaintiffs herein, who were their largest creditors. Accordingly, through their contrivance and at their dictation, H. B. Coyle, the managing clerk of the firm, wrote plaintiffs that he feared something was "going crooked" in regard to the business, and advising them to look after their interests. The pretence of this letter was that it was written by Coyle of his own motion and in the greatest confi-

dence and secrecy, and because (to use his own language) "I owe this much to you." The facts are, as disclosed by the record, the idea of writing the letter originated with defendants, and Coyle would not have written it at all but for the instructions given him to do so.

On receipt of the letter plaintiffs dispatched David March, a trusted employee, to the scene of action, with directions to protect their interest. Within a few days the attachment was sued out. Before it was sued out he was in Monroe, where the senior member of the firm of defendants lived, and from there he went to the town of Bienville, where the business house of defendants was located.

At Bienville, the day before the attachment, he was closeted with the junior member of defendants' firm, who was in immediate charge of the business, and was given access to the books, from which he took a list of forty-two of the best customers of defendants—parties who owed them—and whom he caused to be garnisheed under the writ of attachment, which issued the next day, and under which the store was closed, and all the goods and property of defendants seized, including the books, accounts, notes and other papers of the firm. These books, notes, etc., were not in the store, but were at the residence of H. B. Coyle, who was instructed the day preceding the attachment by the junior member of defendants' firm, within the hearing and presence of David March, that when the sheriff came to attach the store, to look at the papers, and if they were sued out in the name of H. & C. Newman, then to deliver to him the notes and books, but if found to be in the name of any other creditor or creditors, not to turn them over. When the attachment was made the sheriff was accompanied by one of plaintiffs' attorneys, who directed him to seize the books, notes, etc., and told him they were at the residence of Coyle, thus showing the possession of knowledge by plaintiffs through their attorneys and agents, which could only have been derived from defendants or their employees. After seizing the stock of goods the sheriff repaired to the house of Coyle, accompanied by the latter, who there turned over to him the books, notes and other papers.

It is shown that the books had been buried in Coyle's garden by his cook, into whose custody they had been given. It is shown that for eight or ten days before the attachment it was known to defendants' employees and to mnny other persons in and around

Bienville that an attachment was imminent, and that the attaching creditors would be H. & C. Newman. Coyle knew of it two weeks before and had obtained the information from defendants themselves, and it is further shown that in preparation for the attachment defendants instructed Coyle to collect as much cotton and money as possible and to close outstanding accounts by taking notes, which were made payable some to A. Levy, one of defendants, others to Coyle himself, and others to the order of the makers and by them endorsed. Also that the day prior to the attachment a settlement was made with one of the debtors who owed a considerable sum of money, and who was perfectly solvent and responsible, by which settlement, and as an inducement to make it, a discount of one hundred and fifty dollars was allowed. One item of this debtor's account was twelve dollars for the rent or hire of a horse belonging to defendants for the current year, on which a deduction of two dollars was made for the reason that *the horse was to be seized before the year was out.* In point of fact it was seized the next day.

Baer & Levy undoubtedly procured H. & C. Newman to attach them. A sifting of the voluminous evidence in the record leads inevitably to this conclusion.

It is impossible to escape the conviction that the purpose of the suit was, on one part, to give, and, on the other, to receive an unfair advantage over the other creditors.

We might acquit plaintiffs themselves, on their testimony, of direct knowledge of this. They were away in New Orleans. But their agent, March, was on the ground with general instructions to act for them and it is vain for him to deny connivance and collusion..

The abundant evidence of his complicity overwhelms his protest, as it does the denial of defendant Baer, whose testimony was taken under commission though residing within two hours by rail of the court house.

Defendant Levy did not go on the stand in the effort to exculpate himself, or his firm, nor was he called to testify by plaintiffs though within easy reach of the process of the court.

Plaintiffs can not escape the consequences of their agents' acts.

It must be held that David March, representing them, consented to the acts and doings of defendants in furtherance of their and his purpose to secure to plaintiffs an unfair advantage, and ultimately benefit defendants themselves by shielding the business from the

pursuit of the other creditors, and, later, enabling them to handle it in the name of or through other parties.

The record teems with numerous other facts, incidents and circumstances that confirm this view, as well as show that defendants aided plaintiffs all through this litigation in the effort to repel the assault of intervenors.

This conduct of defendants, assented to by the representative of plaintiffs, who sought to turn it to their advantage and thereby secure the full settlement of their claim out of property which was the common pledge of all the creditors, was the doing of a thing reprobated by the law and may well form the subject of the revocatory action.

An insolvent debtor can not give in payment to one creditor to the prejudice of the others any other thing than the sum of money due. C. C. 2658; Taylor vs. Knox, 2 La. 16; Lovell vs. Payne, 30 An. 511.

The acts and doings of an insolvent debtor through which he seeks to give a fraudulent preference to one creditor over others are all the more to be reprobated when the machinery of the law is invoked to give the semblance of plausibility and propriety to such proceedings. Haas vs. Haas, 35 An. 885.

The law recognizes no distinction between a voluntary conveyance of property in fraud of creditors and such an alienation disguised under the forms of judicial proceedings.

It will annul and set aside any machination or contrivance by which this is sought to be done. C. C. 1969, 1970, 1983, 1984, 2658; Muse, Syndic, vs. Yarborough, 11 La. 530.

Neither the law nor the courts are to be used as instruments to work injustice. To attempt this is to aggravate the offending.

An attachment instigated by a debtor for the purpose of giving a favored creditor an advantage will be declared void and of no effect so far as other creditors are concerned who judicially complain of the same as a fraud on their rights. C. C. 1977.

Such attachment, however, will be maintained as between the fraudulent debtor and the favored creditor.

The conclusions of the court below in this case were the same as those herein announced.

In determining questions of fact tending to prove fraud, great weight is to be given to the opinion of the District Judge who saw

and heard the witnesses. Tatum vs. Collins, 43 An. 855; Commission Co. vs. Bond & Williams, 44 An. 844.

Judgment affirmed.

NICHOLLS, C. J., takes no part, not being present at the argument.