(78 South. 140)

No. 22783.

SWAIN v. KIRKPATRICK LUMBER CO. et. al.

(Feb. 25, 1918.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT  &#9398;&rarr;82(2)—LIEN FOR WAGES—"INDEPENDENT CONTRACTOR."

A foreman and filer in a sawmill has a lien or privilege on the material manufactured in the mill when he is employed under Act No. 23 of 1912, p. 30, although his wages are measured by the amount of material produced, less the amount paid by the employer to the workmen who are under the joint control of the employer and foreman. He is not an independent contractor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Contractor.]

2. FRAUDULENT CONVEYANCES  &#9398;&rarr;237(1)— REVOCATORY ACTION.

The revocatory action lies when the sale complained of was made by judicial process, or by convention of the parties.

3. JUDICIAL SALES  &#9398;&rarr;37—VALIDITY—FRAUD —PREVENTION OF COMPETITION.

Fraud in the concealment or misrepresentation of facts is not the only cause which will vitiate a judicial sale. Anything by a party in interest that chills the sale, or prevents competition among the bidders, will, on competent proof, cause such sale to be set aside.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Action by C. H. Swain against the Kirkpatrick Lumber Company, the Calcasieu National Bank of Southwest Louisiana, and the Calcasieu Mercantile Company. Judgment for plaintiff by default, and the bank and the mercantile company appeal. Affirmed.

Pujo & Williamson, of Lake Charles, for appellants. Peterman & Dear and Hundley

& Hawthorn, all of Alexandria, and · Cline & Bell, of Lake Charles, for appellee.

SOMMERVILLE, J. Plaintiff, the foreman and filer in the mill of the Kirkpatrick Lumber Company, is a judgment creditor of that company, with recognition of a lien for wages on the lumber manufactured by said company while he was in its employment, and which was stacked on the yards of said company in Calcasieu parish. He caused the lumber to be provisionally seized; all in accordance which Act 23 of 1912, p. 30.

He alleges that while under seizure the other two defendants, the Calcasieu National Bank of Southwest Louisiana and the Calcasieu Mercantile Company, caused executory process to issue under a chattel mortgage given to them by the Kirkpatrick Lumber Company, under Act 65 of 1912, p. 75, and caused the same 350,000 feet of lumber provisionally seized by him to be seized and sold under the chattel mortgage above referred to, and that the bank became the purchaser thereof for the vile price of $200, and that it has sold the same for the joint benefit and account of the Kirkpatrick Lumber Company, the mercantile company, and itself, and that he has thus been unfairly and fraudulently deprived of his wages and lien therefor.

Plaintiff further alleges and shows that the lumber sold was well worth $6 to $8 per thousand feet. He further alleges that the three defendants conspired and colluded together to prevent, prohibit, suppress, and stifle competitive bidding at the sale of the lumber; that they circulated and caused to be circulated, directly and by inference, various and sundry reports tending to keep off and prevent bidders who were present at the sale from bidding; that no one bid at the sale except the agent and representative of the bank and the mercantile company; and that defendants were thus given an unfair and undue preference, to his injury.

Plaintiff alleges that the lumber company was insolvent on the day of the sale, and he has proved that it was insolvent, to the knowledge of the other defendants, at the date of the chattel mortgage given to them. He further alleged and proved that a large part of the lumber seized and sold under executory process was not covered by the chattel mortgage, to the knowledge of the defendants, and that the funds derived from the sale of the lumber mortgaged and that not mortgaged were commingled and confused.

Plaintiff asked that the sale be annulled and set aside, and, as the property had been disposed of by defendants, that he have judgment in his favor against defendants in solido for the value of the lumber to the extent of his claim.

The lumber company did not answer, and default was taken against it. There was judgment in favor of plaintiff and against the defendants. The bank and the mercantile company have appealed. The lumber company has not appealed.

[1] In their answer, the bank and the mercantile company deny that plaintiff had a lien on the lumber seized and sold. They argue that he was an independent contractor, and not covered by the terms of Act 23 of 1912, p. 30. They also set up the validity of the sale.

The evidence is clear that plaintiff was the foreman and saw filer in the sawmill, and that he received, or was to receive, $3.50 per thousand feet on the lumber manufactured in the mill; that he was to employ the hands engaged in the mill, who were subject to the orders of himself and his employer; that the hands were to be paid by the sawmill company; and that he (plaintiff) was to receive from his employer the difference between the wages thus paid to the other hands and the amount due him at $3.50 per thousand feet of lumber manufactured.

The court has held adversely to the position assumed by the defendants in somewhat similar cases. The sawmill company owned and operated the mill, and plaintiff was hired by it to serve as foreman therein, at the will of the company. The president of the company was present every day, and directed plaintiff and the other workmen. Plaintiff was under the authority of the company, and the other workmen were under the joint authority of plaintiff and the company. It is immaterial what plaintiff's wages were to have been, or how they were to have been paid. Wages are that which are paid for a service rendered; what are paid for labor; hire. Century.

In the case of Lalanne v. McKinney, 28 La. Ann. 642, where laborers were to receive one-half of the proceeds of the cotton and other produce, the court said:

"The testimony of the laborers shows that the contract between them and McKinney was that they were hirelings, to be paid by the half of the proceeds of the cotton and by receiving the half of the other produce. This contract was exactly like the one between the Cowans and their laborers, reported in 22 La. Ann. p. 438, where it is said: 'The plantation in question was owned by the defendants in 1867 and cultivated by them in cotton. The defendants employed certain laborers, and agreed to give them, in lieu of wages, one-third of the gross products of the cotton. There was plainly no partnership in this. The plantation was the Cowans', the cotton as it grew was theirs, the supplies were furnished to them for the crop; and every fiber of the cotton as it matured was affected by the privilege.'"

Again, in the case of Faren v. Sellers, 39 La. Ann. 1017, 3 South. 366, 4 Am. St. Rep. 256, the court quotes from Mr. Wood, 614, as follows:

"The simple test is, Who has the general control over the work? Who has the right to direct what shall be done and how to do it? And if the person employed reserves this power to himself, his relation to his employer is independent and he is a contractor; but if it is reserved to the employer or his agents, the relation is that of master and servant."

In other jurisdictions, findings are to the same effect. See Nyback v. Champagne Lumber Co., 109 Fed. 732, 48 C. C. A. 632:

"Defendant, which owned and operated a sawmill, contracted with a third person to work up the slabs into laths and pickets, using machines in the mill which were run, kept in order, and lighted by defendant. Defendant owned the products, paid the wages of the workmen employed by such person, and paid him the remainder, if any, due, computed at a stipulated price per one thousand for the laths and pickets made. Held, that such person was not an independent contractor, but a servant of defendant, put in charge of particular machines, and paid upon the terms stated, and that whatever duty there was to instruct an inexperienced workman employed in the operation of such machines as to the dangers of the employment remained a duty of defendant."

And Barclay v. Puget Lumber Co., 48 Wash. 241, 93 Pac. 430, 16 L. R. A. (N. S.) 140, 3 Am. Dig. (1908A) p. 1806:

"Where defendant operated a lath mill through a contract with T. by which T. was to receive 75 cents per one thousand laths produced, and was to employ other men, whom defendant was to pay out of the 75 cents per one thousand, T. to receive the balance, * * * and plaintiff was employed by T. to work in the mill, T. was not an independent contractor, * * * and the relation of master and servant existed between plaintiff and defendant."

See, also, Moffet v. Koch, 106 La. 375, 31 South. 40; Blumauer v. Clock, 24 Wash. 596, 64 Pac. 844, 85 Am. St. Rep. 966; Southern Cotton Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638; Employers' Indemnity Co. v. Kelly Coal Co., 149 Ky. 712, 149 S. W. 992, 41 L. R. A. (N. S.) 963; Yeates v. I. C. R. R. Co., 241 Ill. 205, 89 N. E. 338, 7 Am. Dig. 1722.

And in Indiana Iron Co. v. Cray, 19 Ind. App. 565, 48 N. E. 803, 13 Dec. Dig. 27, it was held:

"Defendant was engaged in the business of manufacturing iron and steel and owned and furnished the building, machinery, material, and motive power, and provided the superintendent and head workman in a rolling mill in which plaintiff worked. The department in which plaintiff worked was under the control of a 'boss roller,' who furnished his own assistants and employed all help under him (among whom was plaintiff), kept the time of these assistants, had the right to discharge their assistants, had sole control of manufacturing into iron and steel material furnished him by the defendant, and was paid a certain gross sum for his work, from which he paid his assistants. Defendant company repaired and improved all

machinery, exercised some control over material while it was in the boss roller's hands, and also had the right to discharge men employed by said boss roller. Held, that the boss roller was a foreman, rather than an independent contractor, since such contractor is not the servant of his empoyer, and that from the fact that defendant had the right to discharge plaintiff could be implied the contractual relation of master and servant."

And in Andrews Bros. v. Burns, 22 Ohio Cir. Ct. R. 437, 13 Dec. Dig. 27, it was held:

"Where a rolling mill company employs a boss roller under the rules * * * of the * * * association, the boss roller to employ his own assistant roller, roughers, and heaters; the compensation to be an agreed price per ton for labor performed divided among the boss roller and his assistants, * * * as provided by the rules, * * * and the output of the mill to be under the direction of the superintendent and to his satisfaction, the relation of the company and the employé is that of master and servant."

Plaintiff has not offered direct evidence showing collusion and fraud between the three defendants by which he was deprived of the lumber upon which his lien rested; but the conclusion is clear that the acts of defendants, taken separately and together, deterred bidding at the sheriff's sale, except by one bidder. That bidder was declared in an answer to one of the suits between plaintiff and defendants not to represent them (defendants) at the sale; the bank and the company admit him to have been their representative at the sale in their answer to this suit.

The evidence shows that the bank and the mercantile company knew that the sawmill company was insolvent at the time that they took the mortgage notes foreclosed upon in the executory proceeding; they knew that some, if not about one-half, of the property upon which their chattel mortgage rested had been sold and removed by the lumber company before the seizure was made by them; they caused to be seized and sold lumber upon which they knew their mortgage did not rest; they knew that the president of the sawmill company permitted them to seize and sell lumber upon which their chattel mortgage did not rest, if he did not actually agree to the seizure; they knew before they sought execution on their mortgage notes that plaintiff had sued the sawmill company for his wages as foreman and filer, and had asked to have a lien or privilege on the lumber recognized therefor; they sent a representative to the sale who pretended to be acting for himself; this agent saw several prospective bidders on the day of the sale, and told one of them "whoever bought the lumber would have a lawsuit with the bank," and that person decided he would have to litigate with the bank if he bought, and he did not bid, although he had gone there for the purpose of bidding. Other bidders present refused to bid because the president of the sawmill company told them that the lumber was on leased ground and subject to a landlord's lien, when the yearly rent was only $5, and that had been paid in advance; he also said that the buying of the lumber would not give a right of way for hauling it, and that the railroad spur which was laid to the sawmill was a private spur which belonged to his company, and that it could not be used unless he gave permission to use it. Defendants knew that their bid of $200 was an inadequate price for the lumber, being less than one-tenth of its value. The bank and mercantile company bought the lumber for the joint account of themselves and the sawmill company, and did not credit the account of the latter with the $200; but they, with the assistance of the president of the sawmill company, subsequently sold and delivered the lumber to others for more than $2,000, and divided the receipts between the bank and the mercantile company, and credited the notes of the sawmill company with the full amount realized from the sale.

Thus the three defendants acted in the interest of one another through all the stages of the transaction referred to, and through-

out the litigation, and, at the close, divided the spoils between them.

[2,3] The suit of plaintiff is similar to the revocatory action. Plaintiff is a judgment creditor of the sawmill company, which concern was in insolvent circumstances when the mortgage notes were issued to defendants and when the sale and purchase thereunder took place. These transactions were made in bad faith, and they injured plaintiff. They are deemed under the law to have been made in fraud of the creditors of the sawmill company. It is immaterial that the sale of the lumber was by a judicial proceeding rather than by convention between the parties. On this point, it is said in Newman v. Baer, 50 La. Ann. 329, 23 South. 279:

"An insolvent debtor cannot give in payment to one creditor to the prejudice of the others any other thing than the sum of money due. Rev. Civ. Code, art. 2658; Taylor v. Knox, 2 La. 16; Lovell v. Payne, 30 La. Ann. 511. The acts and doings of an insolvent debtor through which he seeks to give a fraudulent preference to one creditor over others are all the more to be reprobated when the machinery of the law is invoked to give the semblance of plausibility and propriety to such proceedings. Haas v. Haas, 35 La. Ann. 885. The law recognizes no distinction between a voluntary conveyance of property in fraud of creditors and such an alienation disguised under the forms of judicial proceedings. It will annul and set aside any machination or contrivance by which this is sought to be done. Rev. Civ. Code, arts. 1969, 1970, 1983, 2658; Muse v. Yarborough, 11 La. 530. Neither the law nor the courts are to be used as instruments to work injustice. To attempt this is to aggravate the offending."

The state of facts in this case is one which admits most clearly of the application of the revocatory action. Not only contracts which dispose of property, says the Civil Code, article 1984, but all others which are made in fraud of creditors, and deprive them of their recourse upon the property of their debtor, come within the provisions of the section of the Code which treats of this action. In the case of Prats v. His Creditors, 5 Rob. (La.) 288, the court held:

"A fraud perpetrated by the machinery of a judgment, when the courts themselves are made the unconscious instruments, is as liable to be questioned and annulled as when affected by the legal forms of a contract."

And in Stone v. Kidder, 6 La. Ann. 552, the court said:

"Every fraudulent device, contrivance, or artifice by which a creditor may have been injured, and from which a fraud upon his rights is practiced, is reached and remedied by this action."

See, also, to the same effect, Block v. Marks, 47 La. Ann. 108, 16 South. 649.

The judgment of the trial court in setting aside the sheriff's sale was also fully justified because of the acts of defendant's agent in deterring another from bidding, regardless of what his motive was, honest or fraudulent. His acts caused great prejudice to this plaintiff by preventing others from giving a greater price for the lumber.

The law is stated in 2 R. C. L. 1131, to be:

"Sales at auction must be fairly and openly conducted. The great object of the rules regulating such sales and said to be founded upon reasons of public policy is to secure a fair price to the owner or those interested in the proceeds of the property. This can only be accomplished by the means of fair competition. Just as the law protects the purchaser by condemning the practice of employing puffers to enhance the price, in like manner it protects the owner of the property and such persons as may be interested in the proceeds thereof by forbidding the stifling of competition among bidders, irrespective of the cloak under which it is accomplished, in order that those interested in the property may obtain a full equivalent therefor. A sale may be set aside where a mortgagor whose property is being sold at foreclosure sale appeals to the sympathy of the crowd in order to induce them not to bid against him even though his representations are perfectly true. Moreover, it is entirely immaterial whether the statements were made publicly at the sale or privately, so long as they had a depressing effect upon the sale. The rule is equally applicable to any act of the auctioneer of the owner of the property selling, or of third parties as purchasers, which prevents a fair, free and open sale, or which diminishes the competition and stifles or chills the sale."

See, also, Liles v. Rhodes, 7 La. 91; Wood v. Hennen, 9 La. Ann. 264; Chaffe v. Farmer, 34 La. Ann. 1017; Chaffe v. Meyer, 34 La. Ann. 1031; Barclay v. Puget, etc., Lbr.

Co., 48 Wash. 241, 93 Pac. 430, 16 L. R. A. (N. S.) 140.

Act 23 of 1912, p. 30, in the first section gives to "all managers, mechanics or laborers employed by or working in sawmills," etc., liens or privileges on all logs, lumber, etc., manufactured in the mills where such managers, mechanics, or laborers are engaged or employed, for the payment of their salaries or wages.

Plaintiff was engaged and employed in defendant's sawmill as foreman and filer, and he had a lien upon the lumber seized and sold by the other defendants, the bank and the mercantile company, and he was in a position to contest, and he has successfully contested, the validity of the sale of that lumber under the executory process sued out by two of the defendants. Meyer v. Farmer, 36 La. Ann. 785.

The judgment appealed from is affirmed.