218 So.2d 672 (1969)
JAMBOIS O. & M. MACHINE SHOP, INC.
v.
DIXIE MILL SUPPLY COMPANY, Inc.
No. 3268.
Court of Appeal of Louisiana, Fourth Circuit.
January 6, 1969.
*673 Piccione, Piccione & Wooten, Charles N. Wooten, Lafayette, for plaintiff-appellant.
Stone, Pigman, Walther, Wittmann & Hutchinson, David Stone, New Orleans, for defendant-appellee.
Before YARRUT, CHASEZ and REDMANN, JJ.
CHASEZ, Judge.
This appeal was taken by the plaintiff, William C. Sandoz, Trustee in Bankruptcy for Jambois O. & M. Machine Shop, Inc., from a judgment rejecting his demand for annulment of a judicial sale by executory process forced by the defendant-appellee, Dixie Mill Supply Co., Inc.
The facts of this case are clear and, with few exceptions, are not in dispute. Jambois O. & M. Machine Shop, Inc., hereinafter referred to simply as Jambois, Inc., was a family corporation owned primarily by Mr. and Mrs. Sidney Jambois. It was engaged in a general fabrication and repair business in Morgan City, Louisiana. On May 16, 1961, Jambois, Inc., purchased certain items of machinery from Dixie Mill for the price of $40,069.00. It made a down payment of $9,069.00, leaving a balance of $31,000.00. For this balance Dixie Mill took an installment note in the amount of $34,953.12 (which included $3,953.12 in interest), payable in 48 monthly installments of $728.19 each. The note was secured by a chattel mortgage on the purchased equipment. Both the note and the mortgage were executed on behalf of Jambois, Inc. by Sidney J. Jambois, Jr., president of the corporation and registered owner of a majority of its stock, in accordance with a resolution of the board of directors of Jambois, Inc.
On or about November 30, 1963, Sidney J. Jambois, Jr., contacted Dixie Mill and advised it that he wished to buy a large lathe from Dixie Mill, and to trade in a smaller one which was among the items purchased in May, 1961. On November 30, 1963, Mr. Jambois drove from Morgan City to New Orleans for the purpose of buying the larger lathe, and he was accompanied on this trip by his wife, Mrs. Luana T. Jambois. Mr. Jambois then bought the larger lathe for Jambois, Inc. from Dixie Mill for the total price of $9,690.00, and was allowed a credit of $3,000.00 on the old lathe which he traded in.
At that time Jambois, Inc. still had a remaining balance of $16,748.37 (including $972.47 interest), on its original note and mortgage with Dixie Mill. As part of the financial arrangements for purchasing the larger lathe this original note and mortgage was cancelled and the remaining unearned interest of $972.47 was eliminated. In return Mr. Jambois executed a new note secured by a new chattel mortgage encumbering the items subject to the original mortgage as well as the larger lathe. This new note was in the amount of $24,611.04, *674 and included $6,690.00 for the larger lathe minus the trade-in on the old one; $15,775.90 for the balance on the cancelled note less the unearned interest; and $2,145.14 as interest on the new note. The new note was payable in 36 monthly installments of $683.64some $44.55 per month less than installments under the old note. There was no corporate resolution issued by Jambois, Inc. which authorized Sidney Jambois, Jr. to execute this new note and chattel mortgage.
The appellant contends that Mrs. Jambois had no knowledge of the financial arrangements between her husband and Dixie Mill regarding the purchase of the new lathe, although she accompanied him to New Orleans on the day this lathe was purchased, and she was later aware that the payments to Dixie Mill were decreased from $728.19 to $683.64 per month.
In any event Jambois, Inc. did use the purchased equipment including the new lathe in the months that followed, and it made payments on the new mortgage in accordance with its terms.
Some time during the year 1965 Mr. and Mrs. Jambois began to have marital difficulties, and finally became judicially separated. They agreed to have Mr. Jambois turn over his interest in Jambois, Inc. to her, and she assumed the duties of managing directly the affairs of the corporation. By this time the corporation had fallen into a precarious financial situation. It was considerably in arrears on its note to Dixie Mill. Finally on March 10, 1966 Dixie Mill filed a petition for executory process, praying for seizure and sale of the mortgaged chattels, and an order was issued to that effect. The property was seized and, on March 30, 1966, after service of notice on the corporation and advertisement, all according to the requirements of law, the property was sold in globo at a sheriff's sale.
The purchaser at the sheriff's sale was Dixie Mill; the purchase price was $25,000.00, a sum which was some $10,000.00 over the debt due by Jambois, Inc. After deduction of all costs, the sheriff remitted to Jambois, Inc. a check in the sum of $9,628.18, which was accepted by the corporation and endorsed in blank "Jambois O. & M. Machine Shop, Inc., Luana T. Jambois, President."
The record reflects that Dixie Mill itself bought the equipment at the sheriff's sale, after highly competitive bidding. Shortly thereafter, on April 13, 1966, it sold the major item of equipment to a third party for $22,400.00. On April 21, 1966, one day after this present suit was filed, but prior to service of citation, Dixie Mill sold an additional large item of this equipment to a third party for $4,500.00.
After service of citation of this suit upon Dixie Mill and before trial below, Dixie Mill sold four more items purchased by it at the sheriff's sale for a total price of $1,359.00. Additionally it had in its possession at the time of trial two or three more items which it was attempting to sell for the total sum of $15,900.00.
On April 20, 1966, Jambois, Inc. brought this suit for recision of the judicial sale, and return of all of the equipment alleging the nullity of that sale under executory process for the reason that Dixie Mill failed to offer a resolution from the board of directors of Jambois, Inc. authorizing Sidney Jambois, Jr. to execute the enforced note and chattel mortgage. Jambois, Inc. also objected to the form of the chattel mortgage, in that it purported to represent a sale of all the equipment from Dixie Mill to Jambois, Inc. whereas most of the equipment had been sold by Dixie Mill to Jambois some months previously.
Subsequent to the filing of this suit Jambois, Inc. was voluntarily adjudicated a bankrupt, and William C. Sandoz, Trustee in Bankruptcy, was substituted as party plaintiff in this action. The Trustee then filed an amending petition wherein he asked for damages as alternative relief, should *675 Dixie Mill be unable to return the seized machinery.
The case was tried on November 28, 1967. Judgment was rendered in favor of the defendant, Dixie Mill. In his reasons for judgment the trial judge stated that Jambois, Inc. was estopped from asserting the nullity of the sale by executory process. Citing the recent decision of White Motor Co. v. Piggy Bak Cartage Corp., 202 So.2d 294, La.App. 4 Cir. 1967, he stated that once the property was adjudicated and is in the hands of a third party, the principle of estoppel precludes an attack of nullity by the mortgagor on grounds of insufficient authentic evidence, where there is absence of fraud, ill practices, lack of notice or lack of jurisdiction. LSA-C.C.P. Art. 2642 provides two methods for defending against an executory proceeding, and they are an injunction proceeding to arrest the seizure and sale, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale. Jambois, Inc. failed to avail itself of either of these methods of defense.
In addition, the trial judge found as separate grounds for estoppel, the unconditional acceptance by Jambois, Inc. of the proceeds of the judicial sale in excess of the amount required for payment of Dixie Mill.
The appellant Trustee in Bankruptcy recognizes the difficult position in which he now finds himself in attempting to attack for the first time a judicial sale under executory process after the sale has been consummated. He makes two serious arguments however that should be considered at this point.
First he points to the exception in the general rule applicable in these cases, that is in the absence of fraud or ill practices or lack of notification, a judicial sale under executory process cannot be attacked once the sale has been consummated. It is his position, as espoused in his brief and oral argument before this court, that certain elements of the transaction between Dixie Mill and Mr. Sidney J. Jambois, Jr. constituted fraud and ill practices so as to bring this case within the exception of the rule.
Pretermitting a discussion of whether appellant had sufficiently complied with the technical pleading requirements for alleging fraud, we find no evidence in the record which would indicate to us that there was fraud involved in the dealings between Mr. Sidney Jambois acting for Jambois, Inc. and the defendant, Dixie Mill. Nor do we find any basis for a claim of fraud in the manner in which the mortgage and the delinquent note were executed.
In this regard it seems to be appellant's contention that the method in which the second chattel mortgage was executed, that is since it was couched in the terms of a sale and mortgage with Dixie Mill being the vendor, was in itself an "ill practice" which should have rendered null the subsequent sale under executory process. Appellant argues that this second mortgage did not effect a sale of all the equipment which had been subject to the first mortgage, as this equipment had been sold some two years previously and thus already belonged to Jambois, Inc. Hence appellant contends the attempt to make the second mortgage appear to involve a sale was simply a method of enabling Dixie Mill to acquire interest on the value of all equipment rather than just on the new lathe.
Appellant fails to point out however that Jambois, Inc. had some $972.00 interest yet remaining on the first mortgage when it was cancelled and the second mortgage executed. This $972.00 of interest was forgiven and new interest of $2,145.00 accrued. While this represented an increase of $1,173.00, at least $600.00 of this would have accrued had just the new lathe been covered by the second mortgage and the first mortgage been allowed to remain in being. Thus Dixie Mill was only "ahead" by some $570.00. For this $570.00 *676 Dixie Mill extended its risk from 18 months remaining on the first mortgage, to 36 months on the new mortgage, thereby allowing Jambois, Inc. to reduce its monthly payments to Dixie Mill from $728.19 to $683.64. Certainly under these circumstances we find no evidence of fraud in this arrangement.
Next appellant points to the circumstances surrounding the judicial sale itself in an effort to convince us that Dixie Mill was guilty of some ill practice or fraud in this matter. There is no doubt that Dixie Mill made a substantial profit by buying the equipment itself at the sheriff's sale. The facts show that the sale price after open competitive bidding was $25,000.00 for the whole lot in toto. Dixie Mill was then able to turn around and sell two pieces of this equipment for $26,900.00, and later sold some more for an additional sum of $1,359.00 while retaining the pieces which it valued at approximately $16,000.00. While we agree that Dixie Mill had ended up in a favorable financial position as a result of Jambois, Inc. being unable to meet the terms of its mortgage, nonetheless we do not find this to be the basis for a claim of fraud or ill practice. Dixie Mill ran the risk of any mortgagee that the equipment might have deteriorated or become worn to the extent that it might not even realize the outstanding indebtness on it and could not then secure a deficiency judgment for that amount from a substantially unstable corporation.
Further, as to the mechanics of the sale the appellee does not contend that the corporation through Mrs. Jambois did not receive notice according to law that the sale was to take place. She had available to her the methods of defense provided by law. (LSA-C.C.P. Art. 2642). She chose, however, to take no action until the sale had been consummated, and until after she had unconditionally accepted for Jambois, Inc. the $9,268.18 which represented the sum received over and above the outstanding balance due on the mortgage. Had she chosen to enjoin the proceeding or appeal from the order setting the sale it is quite possible she would have been successful for as mentioned above Dixie Mill had not attached a resolution from Jambois, Inc. authorizing Sidney Jambois, Jr. to act for the corporation in securing a second mortgage as same was never issued.
We find the jurisprudence, particularly in the case of White Motor Co. v. Piggy Bak Cartage Corp., supra, holding that the failure to take some action for the corporation at that time renders the judicial sale unassailable now.
Appellant's second argument is centered on the fact that the general rule of unassailability of judicial sales is based on the assumption that once the property has been transferred to an innocent third party, such party should be secure in his title.
However, he points out that in this case a considerable amount of equipment was still in the hands of Dixie Mill, the mortgagee, after it received notice of this suit, and even up to the date of the filing of the suit. He argues that the judgment should now be rendered for the value of the equipment sold after notice of the suit was received and the equipment now in the hands of Dixie Mill should be turned over to him.
We find this to be an interesting argument and perhaps one worthy of merit under other circumstances; however, in this case we find that the action of Mrs. Jambois in unconditionally accepting the proceeds of the sheriff's sale was an acquiescence by her in that sale. As the rights of the Trustee in Bankruptcy are to this extent no greater than that of Mr. Jambois acting for the corporation, we find that he is likewise precluded from claiming the value of the equipment sold or yet in the hands of the mortgageepurchaser at the sheriff's sale.
For the reasons hereinabove set forth, the judgment of the trial court is affirmed; appellant to pay the costs of this appeal.
Affirmed.