364 So.2d 648 (1978)
Raymond C. ELLERD, Plaintiff-Appellant,
v.
John Henry WILLIAMS, Sr. and Victoria Holloway Williams, Defendants-Appellees.
No. 13666.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1978.
Donald R. Miller, Shreveport, for plaintiff-appellant.
James E. Bookter, Bossier City, for defendants-appellees.
Before BOLIN, PRICE and HALL, JJ.
HALL, Judge.
Raymond C. Ellerd, plaintiff, appeals from a judgment sustaining an exception of no cause of action filed by John Williams, defendant, and dismissing his suit to set aside a sheriff's sale or for damages. We find the petition states a cause of action and reverse the judgment of the trial court.
The allegations of Ellerd's petition must be taken as true to determine whether it states a cause of action. The petition alleges that on February 4, 1976 Ellerd, a nonresident domiciled in New Mexico, bought a subdivision lot located in Shreveport from Williams. Ellerd issued a $6,000 note secured by a special mortgage on the property in favor of Williams. On June 16, 1977 Williams initiated foreclosure proceedings against the property because Ellerd was behind in his payments. A writ of seizure and sale was issued on that day and a curator, Mr. McMichael, was appointed for Ellerd. Ellerd, upon learning of the foreclosure proceedings, expressed his desire to avoid the sale of the property. McMichael communicated this desire to Mr. Bookter, Williams' attorney. Bookter, after discussion with Williams, informed McMichael that to avoid the sale of the property Ellerd would have to pay the entire principal balance due on the note plus interest, together with attorney's fees and all costs of the proceedings. McMichael communicated this offer to Ellerd who began to make the necessary financial arrangements. A notice of seizure and sale was issued and the sheriff's sale of the property was scheduled for September 21, 1977.
The crucial allegations of the petition then state:

*649 "11.
"That on September 20, 1977, Mr. Ellerd informed Mr. McMichael that he could fly to Shreveport on the day of the sale with the money necessary to avoid the sale or to purchase the property.

12.
"That on the morning of September 20, 1977, at 9:00 AM Mr. McMichael told Mr. Bookter that Mr. Ellerd had the money as discussed previously, and could come to Shreveport that day to complete the agreement.

13.
"That Mr. Bookter told Mr. McMichael that Mr. Ellerd did not need to come to Shreveport, that he, Mr. Bookter, would buy the property at the sheriff's sale for his clients, Mr. and Mrs. Williams, and that Mr. Ellerd could send the money to Shreveport, and upon its arrival Mr. McMichael could deliver it to the Williams' who would then execute a deed to the property in favor of Mr. Ellerd.

14.
"That Mr. McMichael relied on the statements of Mr. Bookter and advised Mr. Ellerd by telephone that he need not make the trip to Shreveport.

15.
"That Mr. Ellerd sent the money to Shreveport, and upon its arrival, Mr. McMichael contacted Mr. Bookter, who advised that the Williams' were no longer willing to deed the Property back to Mr. Ellerd at the price agreed upon, and would only do so at a price much higher than the agreed price.

16.
"That the property has a value of approximately $15,000.00 due to Mr. Ellerd's improvements on it while he was the owner, and that the only consideration given for the property by the Williams' was the extinguishment of a debt of approximately $6,500.00 owed by Mr. Ellerd.

17.
"That the representations of the Williams' acting through their authorized agent, Mr. Bookter, were relied upon by Mr. Ellerd, acting through his authorized agent, Mr. McMichael, in that Mr. Ellerd made no effort to come to Shreveport on the day of the sale, and therefore, were such that free competition among bidders was hindered at the sale."
Williams contends that by this petition Ellerd is trying to enforce an oral contract to sell immovable property of which parol evidence is not admissible. Actually, the essence of Ellerd's cause of action is to annul a judicial proceeding because of fraud or ill practices of which there is no prohibition against parol evidence. Ellerd has alleged he was ready, willing and able to effect payment of the debt, which would have terminated the litigation and would have prevented the sheriff's sale. According to the petition, Ellerd was led to believe by the Williams' duly authorized attorney that it was not necessary for him to travel to Shreveport to make payment prior to the sale but that the same result would ensue if he merely sent the money even though payment would be made after the sale.
Assuming the truthfulness of the allegations, Ellerd was misled into a false sense of security by the defendants through their agent. The actions of Williams' agent prevented Ellerd from satisfying the Williams' demand by paying the debt. Had Williams refused to accept payment, Ellerd could have prevented the public sale of the lot and retained ownership by "payment to the sheriff of the judgment, with interest and costs." LSA-C.C.P. Art. 2340. Thus, according to the allegations, the sheriff's sale was pursued and accomplished through conduct tantamount to fraud or ill practices.
A final judgment can be annulled under LSA-C.C.P. Art. 2004 if it was obtained by fraud or ill practices. TAPP v. Guaranty Finance Company, 158 So.2d 228 (La.App. 1st Cir. 1963), writ refused 245 La. 640, 641, 160 So.2d 228 (1964) states:

*650 ". . . The article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment, of some legal right, and where the enforcement of the judgment would be unconscientious and inequitable.. . ."
In Collins v. Collins, 325 So.2d 773 (La.App. 2d Cir. 1976) defendant's attorney assured plaintiff's attorney that he would take no action until plaintiff filed an amended answer. A subsequent judgment of separation obtained before the amended answer was filed, was set aside on the grounds it had been obtained by ill practices.
By analogy, since a judgment can be annulled because of fraud or ill practices, a sheriff's sale pursuant to a judgment ordering executory process should be subject to annulment for the same reasons where the fraud or ill practices were done by the creditor and adjudicatee and no third party rights have intervened. Several cases have stated the general rule on attacking judicial sales is "in the absence of fraud or ill practices or lack of notification, a judicial sale under executory process cannot be attacked once the sale has been consummated." Jambois O. & M. Machine Shop, Inc. v. Dixie Mill Sup. Co., 218 So.2d 672 (La.App. 4th Cir. 1969). Also see White Motor Co. v. Piggy Bak Cartage Corp., 202 So.2d 294 (La.App. 4th Cir. 1967). The implication of that rule is that a sale under executory process can be attacked for fraud or ill practices.
Judicial sales have been set aside when the competitive bidding has been stifled by the adjudicatee. Konen v. Konen, 165 La. 288, 115 So. 490 (1928); First Nat. Bank of Abbeville v. Hebert, 162 La. 703, 111 So. 66 (1926); Swain v. Kirkpatrick Lumber Co., 143 La. 30, 78 So. 140 (1918). While the facts of this case do not precisely amount to a stifling of the competition, the effect is the same. The actions of the adjudicatee Williams prevented Ellerd from protecting his rights as owner.
Ellerd's petition alleges Williams' action deprived him of his opportunity to end the litigation and retain ownership of the property by paying the debt, costs and interest prior to the judicial sale. We find the petition states a cause of action against Williams, adjudicatee in the sheriff's sale, for annulment of the sheriff's sale, or for damages. Accordingly, the judgment sustaining the exception of no cause of action is reversed, the exception overruled, and the case is remanded to the district court for further proceedings, costs to be assessed upon final disposition of this matter.