433 So.2d 339 (1983)
Felton BOYD, Plaintiff-Appellant,
v.
FARMERS-MERCHANTS BANK & TRUST CO., Defendant-Appellees.
No. 82-786.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
Rehearing Denied July 14, 1983.
Sylvia R. Cooks, Lafayette, for plaintiff-appellant.
Champagne, Colomb & Brumbaugh, George J. Champagne, Jr., Lafayette, for defendants-appellees.
*340 Before FORET, CUTRER and DOUCET, JJ.
CUTRER, Judge.
Plaintiff filed suit to set aside the judicial sale of his home alleging as grounds the defendant bank's breach of an agreement to provide plaintiff financing and its subsequent purchase of the property on behalf of plaintiff's estranged wife. From an adverse judgment, plaintiff appeals. We reverse.
Plaintiff, Felton Boyd, and his former wife, Ethel Demouchet Boyd, defendant, acquired jointly a lot upon which was situated the family home. This property, located at 848 St. Martin Street, Breaux Bridge, Louisiana, is the subject of the present action. Plaintiff and defendant parted and, thereafter, Mrs. Boyd filed for separation and division of the community assets. In a separate proceeding a judgment was rendered directing a sale of the community asset to effect a partition. Said judgment enjoined the parties from encumbering the property which was relatively free of encumbrances.
Plaintiff secured the services of Mr. Terry Theriot, a local attorney, to assist in protecting his interest in the subject property and to aid him in obtaining a loan from the defendant, Farmers-Merchants Bank and Trust Company (Bank), in order to make a bid at public sale of the property. (It should be noted that plaintiff's need for counsel's assistance was accentuated by the fact that plaintiff is illiterate.) On July 3, 1978, plaintiff submitted a loan application wherein it was stated that the reason for seeking the loan was to buy the community property at public auction and plaintiff would then offer, as security, a mortgage on the house and lot. The financial statement which accompanied the loan application placed the value of the offered security at $18,000.00. Subsequently, Mr. Theriot conferred with Bank official, Mr. Chester Guidry, to clarify the fact that the injunction prevented plaintiff from providing a direct mortgage on the property, thus other arrangements would have to be made to secure the loan. Approximately two weeks prior to the date said property was to be offered for sale, the Bank approved and agreed to loan the plaintiff Fifteen Thousand ($15,000.00) Dollars to be used exclusively by the plaintiff as "bid money" on the property. According to plaintiff, the approved sum was to be tendered to him on the day of the sheriff's sale.
The attorney for the plaintiff prepared a note and collateral mortgage in favor of the Bank, to be executed by the plaintiff subsequent to his successful bid on the property. The plaintiff appeared at the Bank on the morning of the sale to obtain the loan as approved. He had in his possession all the documents prepared in favor of the Bank. However, a representative of the Bank informed the plaintiff that his approved loan would not be honored.
Meanwhile, Mrs. Boyd had also approached the defendant Bank seeking financing for purchase of the family home. Approximately two weeks before the sale, Mrs. Boyd visited Mr. W.O. Clause, Chairman of the Board of Directors of the Bank and a long-time acquaintance, at the officer's home. Mr. Clause appraised the property for Mrs. Boyd, assigning a value of $15,500.00. On the day of the sale, July 28, 1978, Mr. Clause accompanied Mrs. Boyd to the sheriff's office and purchased the property, having placed the sole bid in the sum of $5,200.00. Mr. Clause informed the sheriff that he wanted the property placed in Ethel Boyd's name. By act of credit sale dated August 2, 1978, Mr. Clause formally transferred the property to Mrs. Boyd who paid by a promissory note in the amount of $5,400.00 payable on demand at defendant's bank. Mrs. Boyd filled out a loan application on August 7, 1978, identical in form to the one provided to her estranged husband and, like plaintiff, offered as security a mortgage on the property sold at public auction. She listed the value of the house at $15,000.00. The loan was approved by W.O. Clause and other officers of the Bank.
Subsequent to the sheriff's sale, the plaintiff's share of the proceeds were tendered to him. He refused acceptance. This suit followed wherein named as defendants *341 were Mrs. Ethel Boyd, Farmers-Merchants Bank and Trust Company, W.O. Clause, individually and as a member of the Board of Directors of defendant Bank, and other directors of defendant Bank in their official capacity.
On the day of the trial, after presentation of the evidence and arguments on the merits, the trial judge rejected plaintiff's demands and dismissed suit. From that judgment plaintiff appeals assigning the following specifications of error:
(1) The trial judge erred in failing to find that the defendant, Farmers-Merchants Bank and Trust Company, breached a contractual obligation to extend the loan as approved; and
(2) The trial judge erred in failing to find that the defendants, W.O. Clause and Ethel Demouchet Boyd, were unjustly enriched and the totality of circumstances in this case are unconscionable, warranting rescission of the sale.
Regarding the terms of the agreement to loan, the Bank contends it was the parties' intention that plaintiff either provide the Bank with a mortgage on the property prior to judicial sale or secure the funds elsewhere to bid on the property and, in the event his bid was the highest, the Bank would then acquire a mortgage and provide financing. However, the record reveals that the lender knew of plaintiff's need for credit prior to the sheriff's sale and understood that the aforementioned injunction prevented plaintiff from encumbering the property pending partition. Nevertheless, defendant contends it was bank policy not to advance funds for purchase of property without first acquiring a mortgage. Assuming arguendo that the intended arrangement was that plaintiff would provide the Bank with a mortgage prior to purchase, notwithstanding the injunction, it would be impossible for the parties to know whether plaintiff's bid would be successful and, if so, what sum would have to be tendered. As pointed out in Capital Building and Loan Association v. Nicholas, 330 So.2d 364, 365 (La.App. 4th Cir.1976):
"[I]t would not be possible for an adjudicatee at public auction to have a cashier's check, a certified check, or a similar negotiable instrument at the bidding without knowing the exact sale price. Further it would be impracticable to require all bidders to carry money to cover whatever amount is needed to buy at public auction...."
Thus, if the arrangement were as suggested by defendant, it would be virtually impossible for the Bank to provide plaintiff with a negotiable instrument in an amount equal to the sale price. And, it would be unreasonable to expect plaintiff to carry cash (presumably in the sum of $15,000.00 as per the approved loan application) to the sheriff's sale when the possibility remained that plaintiff's bid would not be the highest and his motive for securing the loan would, accordingly, be vitiated.
The Bank's contention that plaintiff was to purchase the property, then provide a mortgage before financing would be available, is likewise not supported by the evidence. The record reveals that plaintiff was not in a position to pay for the property and, even if he were, his need for financing after the fact would be highly questionable. The record indicates that plaintiff relied on defendant's offer to provide financing for his bid and Bank officials gave assurances that they would honor their agreement to the loan. As we stated in Haymon v. Holliday, 405 So.2d 1304 (La. App. 3rd Cir.1981):
"[W]here a contract is capable of construction in accordance with justice and fair dealing, courts will adopt such construction instead of one entailing loss to a party to the contract, Terrell v. Alexandria Auto Co., 12 La.App. 625, 125 So. 757 (2nd Cir.1930); Ascension Red Cypress Co. v. New River Drainage Dist., 149 La. 764, 90 So. 165 (1922); as persons may be expected to contract with one another on a basis equitable to each. Texaco, Inc. v. Vermilion Parish School Bd., 244 La. 408, 152 So.2d 541 (1963). In a doubtful case the agreement is interpreted against the seller. La.Civ.Code art. 2474; Robbert v. *342 Equitable Life Assur. Soc. of United States, 217 La. 325, 46 So.2d 286 (1950); Kemp v. Beasley, 188 So.2d 425 (La.App. 3rd Cir.1966); Wurzlow v. Placid Oil Co., 279 So.2d 749 (La.App. 1st Cir.1973); [writ refused, 282 So.2d 140 (La.1973)]; Lanier v. Trans-World Life Insurance Co., 258 So.2d 103 (La.App. 2nd Cir.1972). This rule is particularly applicable where there is substantial disparity in the relative bargaining power between the parties."
With these rules in mind, we find that both interpretations of the contract suggested by defendant are negated by the evidence.
From our review of the record, we have concluded that it was the parties' intention that defendant was to provide plaintiff with a letter of credit reciting its agreement to loan the latter up to $15,000.00, conditioned upon plaintiff successfully bidding on the subject property and providing the Bank with a mortgage following acquisition. The Bank's revocation of their offer to finance plaintiff's attempt to purchase his home took place at an unreasonable time and the effect of their breach was to lessen competition at the judicial sale.
As a general rule, a judicial sale cannot be attacked once the sale is consummated in the absence of fraud or ill practices. The reason for the rule is that, once the property has been transferred to an innocent third party, such party should be secure in his title. Jambois O. & M. Machine Shop, Inc. v. Dixie Mill Sup. Co., Inc., 218 So.2d 672 (La.App. 4th Cir.1969). Here, however, the rights of innocent third parties are not at stake. Cf: Pease v. Gatti, 202 La. 698, 12 So.2d 684 (1942).
"One of the objects of sales at public auction is to obtain a fair price for those interested in the proceeds of the property. This is said to be the great object of rules regulating such sales. Hence the concealment or misrepresentation of facts, amounting to fraud, is not the only cause for annulling a judicial sale, but anything said or done by one who becomes an adjudicatee, for the purpose of preventing competition at the sale, or, in other words, for the purpose of chilling it, which is reasonably capable of doing so, and has that effect, will be sufficient to annul the sale. Swain v. Kirkpatrick Lumber Co., 143 La. 30, 78 So. 140 [1918], 20 A.L.R. 665, 2 R.C.L. § 16, p. 1131....." (Emphasis added.)
Konen v. Konen, 165 La. 288, 115 So. 490 (1928). Accord: Pease v. Gatti; supra; Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582 (1953). The Bank's breach of their agreement to loan plaintiff money effectively prevented competition at the sale. That breach, coupled with the Bank officer's subsequent purchase and resulting enrichment, constitutes such an irregularity so as to justify setting aside the sheriff's sale.
Accordingly, the judgment appealed is reversed, the judicial sale is hereby set aside and the case is remanded to the trial court for further proceedings consistent with this opinion. All costs of these proceedings, both at the trial and appellate levels, are taxed to defendant-Farmers-Merchants Bank and Trust Company.
REVERSED AND REMANDED.