MID–STATE HOMES, INC.

v.

Eddie Belle **PORTIS**, Don Hathaway, Sheriff of Caddo Parish, Louisiana, and W. Orie Hunter, Clerk of Court of Caddo Parish, Louisiana.

Civ. A. No. 85–0427.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Feb. 2, 1987.

23. Tex.Rev.Civ.Stat.Ann., art. 5526.

Charles N. Harper, Jones, Tete, Nolen, Hanchey, Swift & Spears, Lake Charles, La., for Mid-State Homes, Inc.

Robert G. Pugh, Pugh & Push, Shreveport, La., for Eddie Belle Portis.

William M. Cady, Asst. Atty. Gen., State of La., Shreveport, La., for Clerk of Court Hunter.

Edwin L. Blewer, Jr., Cook, Yancey, King ·& Galloway, Shreveport, La., for Sheriff Hathaway.

## MEMORANDUM OPINION

STAGG, Chief Judge.

This is a challenge to the constitutionality of Louisiana's executory process. Plaintiff, Mid-State Homes, Inc. ("Mid-State") was the holder of a second mortgage on property in Caddo Parish, Louisiana. This property was sold by the Caddo Parish sheriff after executory proceedings were instituted by the first mortgagee. The sale did not bring sufficient funds to pay the second mortgage, and Mid-State's privilege was erased by the Clerk of Court in accordance with Louisiana law. Made defendants are: Eddie Belle Portis ("Portis"), the first mortgagee; Don Hathaway, Sheriff of Caddo Parish; and W. Orie Hunter, Clerk of Court for the First Judicial District Court, Caddo Parish and *ex officio* recorded of mortgages. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 2201.

## STATUTORY FRAMEWORK

The Louisiana Supreme Court has defined executory process as "an action *in rem* by the holder of a mortgage or privilege evidenced by an authentic act importing a confession of judgment to affect the seizure and sale of the encumbered property." *Buckner v. Carmack*, 272 So.2d 326, 329 (La.1973). *See* La.Code Civ.P. art. 2631. "It is a civil law remedy, having no counterpart in the common law." *Buckner*, 329 So.2d at 329.

The seizing creditor may use executory proceedings to enforce a mortgage or privilege only if the debtor has executed a confession of judgment[1] by authentic act and if all required proof[2] of the creditor's right

---

1. La.Code Civ.P. art. 2632 provides:

   An act evidencing a mortgage or privilege imports a confession of judgment when the obligor therein acknowledges the obligation secured thereby, whether then existing or to arise thereafter, and confesses judgment thereon if the obligation is not paid at maturity.

2. La.Code Civ.P. art. 2635 provides:

   The plaintiff shall submit with his petition the authentic evidence necessary to prove his right to use executory process to enforce the mortgage or privilege. These exhibits shall include authentic evidence of:

to use executory process is also in authentic form. *See* La.Code Civ.P. arts. 2631, 2632, and 2635. Generally, an authentic act is one executed before, and signed by, a notary public and two witnesses. *See* La. Civ.Code art. 1833 (rev.1984) (former art. 2234 La.Civ.Code (1870)).

The creditor seeking to enforce the mortgage or privilege by executory process files a petition with supporting authentic documents in the parish where the property is located or where venue is proper against the defendant debtor. La.Code Civ.P. arts. 2633 and 2634. The petition is reviewed by the state district court judge who "shall order the issuance of a writ of seizure and sale commanding the sheriff to seize and sell the property" "[i]f the plaintiff is entitled thereto." La.Code Civ.P. art. 2638. Typically, the seizure is not actual, but is rather a constructive seizure with the only evidence of seizure being a recordation of the writ in the public records. *See* La.R.S. 13:3851–13:3858; La.Code Civ.P. art. 326.

Before the writ of seizure and sale may be issued, demand for payment within three days must be made on the defendant unless the demand has been waived in the act of mortgage or privilege. La.Code Civ.P. art. 2639. If demand for payment has been waived, then the writ of seizure

and sale is issued immediately without the three-day delay. The sheriff must "promptly" serve a written notice of seizure on the debtor. La.Code Civ.P. arts. 2293 and 2721. This notice cannot be waived. La.Code Civ.P. art. 2721.

After the seizure, the sheriff advertises the sale of the property, which may be sold only after appraisal unless appraisal has been waived. La.Code Civ.P. arts. 2722 and 2723. *See also* La.Code Civ.P. art. 2331. The debtor may halt the sale by payment to the sheriff of the judgment plus interest and costs. La.Code Civ.P. art. 2340. He may assert any defenses or procedural objections to the executory proceedings by suspensive appeal or injunction. La.Code Civ.P. arts. 2642, and 2751–2754.

Any third person who also claims a mortgage or privilege on the property seized may assert his right to share in the proceeds of the sale by intervention in the executory process proceedings. La.Code Civ.P. art. 2643. The sheriff is not required by Louisiana law to serve these third persons with notice of the seizure. However, under La.R.S. 13:3886, any person can request notification by the sheriff of the seizure of specific immovable property.[3] The request for notice of seizure must

(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege.

(2) The authentic act of mortgage or privilege on immovable property importing a confession of judgment.

(3) The act of mortgage or privilege on movable property importing a confession of judgment whether by authentic act or by private signature duly acknowledged.

(4) Any judgment, judicial letters, order of court, or authentic act necessary to complete the proof of plaintiff's right to use executory process.

This requirement of authentic evidence is necessary only in those cases, and to the extent, provided by law. A 'variance between the recitals of the note and of the mortgage regarding the obligation to pay attorney's fees shall not preclude the use of executory process.

3. La.R.S. 13:3886 provides:

A. Any person desiring to be notified in the event specific immovable property is

seized shall file a request for notice of seizure in the mortgage records of the parish where the immovable property is located. The request for notice of seizure shall state the legal description of the immovable property, the owner of the property, and the name and address of the person desiring notice of seizure. The person desiring notice of seizure shall pay the sum of ten dollars to the sheriff, for deposit in the sheriffs' general fund, to defray the cost of providing the notice of seizure in the event said property is seized.

B. In the event of seizure of immovable property, the sheriff shall request from the clerk of court, or the recorder of mortgages for the paris of Orleans, a mortgage certificate at least twenty-one days prior to the sheriff's sale. The mortgage certificate shall include any requests for notice of seizure. Upon receipt of the mortgage certificate the sheriff shall notify, at least ten days prior to the sheriff's sale, those persons requesting notice of the seizure. The notice of seizure shall be by certified mail or actual delivery and shall include the name and address of the seizing

---

---

state a legal description of the property, the owner of the property, and give the name and address of the person desiring notice. La.R.S. 13:3886(A). He must also deposit ten dollars with the sheriff "to defray the cost of providing notice of seizure...." *Id.*

The distribution of sale proceeds depends on the rank of the seizing creditor. The sheriff first deducts his costs from the proceeds, then pays the seizing creditor, followed by payments to inferior creditors. La.Code Civ.P. art. 2373. Any surplus, is paid to the debtor. *Id.* However, if the seizing creditor does not hold the highest ranked mortgage, lien or privilege on the property, only the purchase price in excess of the superior security will be paid by the purchaser to the sheriff, and thus to the seizing creditor. La.Code Civ.P. art. 2374. This is due to the fact that the property is sold subject to any mortgage, lien, or privilege superior to that of the seizing creditor. La.Code Civ.P. art. 2335.

The rights of a superior creditor may never be diminished through executory proceedings convoked by an inferior creditor. If the purchase price at the sheriff's sale is insufficient to discharge the cost of the sale and the superior security interest, there is no sale. La.Code Civ.P. art. 2337. However, the rights of an inferior creditor may be diminished since a superior creditor may force the judicial sale of property "even though the price is not sufficient to satisfy his or the inferior mortgages, liens, and privileges." La.Code Civ.P. art. 2338. The purchaser at the sheriff's sale is "liable for nothing beyond the purchase price." La.Code Civ.P. art. 2375. The sheriff gives the purchaser a release from the mortgage, lien, or privilege of the seizing creditor *and* from all inferior security interests in the property. La.Code Civ.P. art. 2376. The sheriff directs the recorder of mortgages to cancel the inscriptions of security rights held by the seizing creditor and all released inferior creditors on the property sold. *Id.*

FACTS

The facts of this case are simple and have been stipulated by the parties. Mid-State is the holder of a promissory note executed on June 11, 1982 by Webster Booker and Lillie Mae Booker ("the Bookers") in the sum of $36,698.40. This promissory note was secured by a mortgage on immovable property in Caddo Parish, Louisiana. The mortgage was not recorded in the mortgage records of Caddo parish until December 27, 1982. Portis is also the holder of a promissory note and mortgage executed by the Bookers on the same property as that mortgaged to Mid-State. This promissory note and mortgage was executed on November 24, 1982 and recorded on November 29, 1982 in the mortgage records of Caddo Parish. Under Louisiana law, Portis held the superior mortgage on the property since Portis' mortgage was recorded prior to the recordation of the Mid-State mortgage. *See* La.Civ.Code art. 3342; La.R.S. 9:2721.

On March 14, 1984, Portis filed a petition for executory process in the First Judicial District Court, Caddo Parish, Louisiana seeking to foreclose on the property encumbered by both her mortgage and the inferior mortgage of Mid-State. A writ of seizure and sale was issued and the sheriff advertised the sale of the property. This constructive notice through advertisement was the only notice provided to Mid-State. Mid-State had not requested notice of seizure pursuant to La.R.S. 13:3886. The sale was held on July 18, 1984,[4] and Portis was

---

creditor, the method of seizure and the sum owed, and the date of the sheriff's sale.

C. Neither the clerk of court nor the sheriff, or any of their officers, agents, or employees, shall be held liable if a reasonable attempt has been made to mail or deliver the notice to the address provided in the request.

D. The failure of the sheriff to notify a person requesting notice of seizure shall not affect the rights of the seizing creditor nor invalidate the sheriff's sale.

4. The date of the sale is erroneously identified as June 18, 1984 in the stipulated facts. Review of the certified documents of the state court executory process proceedings reveals that, in fact, the sale was conducted on July 18, 1984.

the highest bidder. Portis' bid was insufficient to cover the inferior mortgage, and on July 20, 1984 the Clerk of Court for Caddo Parish cancelled Mid-State's mortgage as provided by Louisiana law.

ISSUES

The question presented is whether Louisiana's executory process system violates the Fourteenth Amendment's due process guarantees by failing to provide inferior creditors with notice of seizure by a superior creditor. This requires the court to assess the constitutionality of both the constructive notice provisions of the Louisiana Code of Civil Procedure as well as the statutory provisions by which any person may request notice of seizure of a particular property upon compliance with La.R.S. 13:3886.

CONSTITUTIONALITY OF LOUISIANA'S EXECUTORY PROCESS

Mid-State argues that the Louisiana system of executory process is unconstitutional under controlling jurisprudence because inferior creditors, who face the potential of losing their security interests after sale of the property, are not given notice of the proceedings. The defendants contend that La.R.S. 13:3886 provides sufficient due process safeguards and that Mid-State has no grounds for a due process objection because its address was not reasonably ascertainable. The defendants maintain that controlling Supreme Court authority relieves the state from any obligation to track down the identity and address of unknown parties in interest.

The seminal cases on the constitutional sufficiency of judicial notice are *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). The *Mullane* court noted that "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." 70 S.Ct. at 656–57. Since "process which is a mere gesture is not due process" and since the "right to be heard has little reality or worth unless one is informed that the matter is pending," the notice required by the Due Process Clause must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 657.

The *Mullane* court held that a New York trust statute which provided only for constructive notice to beneficiaries of the trustee's petition for settlement violated the Due Process Clause as applied to interested parties whose names and addresses were known to the trustee bank. *Id.* at 660. However, constructive notice by publication in the newspaper was deemed sufficient with regards to those "whose interest or addresses are unknown to the trustee." *Id.* at 659.

Thirty-three years later in *Mennonite*, the Supreme Court returned to the subject of the sufficiency of notice in judicial proceedings. At issue in *Mennonite* was the constitutionality of the Indiana tax sales procedures which gave no notice to mortgagees of the pending sale for delinquent taxes. The mortgagee in that case did not discover that the mortgaged property had been sold until after the redemption period had passed and the tax sale purchaser brought an action to quiet title. The *Mennonite* court held:

When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane.*

103 S.Ct. at 2711. The sophistication of the creditor did not affect the state's obligation to provide a constitutional form of notice. *Id.* at 2712. Nevertheless, the state is not required "to undertake extraordinary efforts to discover the identity and where-

abouts of a mortgagee whose identity is not in the public records." Id. at 2711 n. 4.

■ As a second mortgagee, Mid-State has a significant, constitutionally protected property interest in the Bookers' property. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *FDIC v. Morrison*, 747 F.2d 610 (11th Cir.1984). This property interest was impaired through direct state action when the mortgaged property was seized and sold and the sheriff directed that plaintiff's mortgage be erased. *See generally Bonner v. B–W Utilities, Inc.*, 452 F.Supp. 1295, 1300 (W.D.La.1978). Accordingly, Mid-State was entitled to notice and an opportunity to be heard before the deprivation of its interest. *See Mullane* and *Mennonite, supra.*

Standing alone, the constructive notice provided by the publication of the proposed sale of property under the Louisiana Code of Civil Procedure does not meet the minimal requirements of the Due Process Clause. Such notice is not "reasonably calculated" to apprise those with security interests in the property of the pending judicial sale and the potential loss of their mortgage, lien, or privilege. *See Mullane*, 70 S.Ct. at 657. As the *Mennonite* court noted "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of *any* party...." 103 S.Ct. at 2712. However, the constructive notice provisions of the Louisiana Code of Civil Procedure do not stand alone. They must be construed *in pari materia* with the Louisiana Revised Statutes which supplement the Code. La.R.S. 13:3886 provides a statutory method by which *any* person may obtain notice by mail of the seizure of specified property upon payment of a ten-dollar fee.

Although the *Mennonite* analysis has been characterized as "slightly more rigorous" than that of *Mullane*, at least one court has concluded that "the basic flexibility of the *Mullane* standard has not been discarded." *Bender v. City of Rochester*, 765 F.2d 7, 10–11 (2d Cir.1985). Viewed in this light, the Louisiana system which gives notice to inferior creditors—or anyone for that matter—once they have identified themselves and paid a nominal fee passes constitutional muster.

It is true, as Mid-State argues, that the *Mennonite* court stated that "a party's ability to take steps to safeguard its interest does not relieve the State of its constitutional obligation." 103 S.Ct. at 2712. However, it is equally true that the *Mennonite* opinion places as much importance on whether the party's "name and address are reasonably ascertainable." *Id. Mennonite* requires notice by mail *only* "[w]hen the mortgagee is identified in a mortgage that is publicly recorded...." *Id.* at 2711. In implementing the dictates of *Mennonite*, it is not unreasonable or unconstitutional for Louisiana to require those seeking notice of seizure and sale of a particular piece of property to list their names and addresses and to pay a ten-dollar fee to cover the costs of the notice.

■ A state may not deny any person an opportunity to be heard by interposing substantial fees as a barrier to access to the courts. *See e.g., Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). However, the Supreme Court has held that a state may use "reasonable procedural provisions to safeguard litigated property." *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 877, 31 L.Ed.2d 36 (1972). The *Lindsey* court held that a state "may properly take steps to insure that an appellant post adequate security before an appeal to preserve the property at issue, to guard a damage award already made, or to insure a landlord against loss of rent if the tenant remains in possession...." *Id.* at 876. However, the *Lindsey* court struck down as violative of the Equal Protection Clause a requirement that a double-bond be posted in landlord-tenant disputes. *Id.* Likewise, the Louisiana provision which requires security to be furnished by any debtor who seeks to contest executory process

has been upheld as constitutional. *Ross v. Brown Title Corp.*, 356 F.Supp. 595 (E.D. La.1973), *aff'd*, 412 U.S. 934, 93 S.Ct. 2788, 37 L.Ed.2d 394 (1973).

If the state may require the payment of accruing rent and the posting of security bonds for the litigation of the merits of a property dispute, then this court cannot fathom why the payment of a nominal fee for notice of a property's seizure would run afoul of the constitution. Indeed, taken to its logical extreme, if a creditor were entitled to free notice, he should be entitled to free recordation since recordation of a mortgage is the *sine qua non* of the creditor's right to enforce his privilege. The simple dictates of the Due Process Clause do not require such absurdities. Nor are they offended by Louisiana's simple requirement that a creditor seeking notice must list his name and address and pay a negligible fee.

■ Even if it is unconstitutional for Louisiana to require separate registration and payment for notice of seizure under *Mullane* and *Mennonite*, there is no constitutional violation in this case because the identity of the second mortgagee was not reasonably ascertainable in this case. As noted above, there is absolutely no requirement that the state undertake extraordinary efforts to discover the identity and address of a mortgagee who does not appear in the public record. *See Mennonite*, 103 S.Ct. at 2711 n. 4, 2712.

In this case, plaintiff Mid-State was not identified in the body of the mortgage. Rather, its name appears at the top of the document where it is typed in where the name Jim Walter Homes, Inc. had been marked out and at the bottom on a signature line, again where Jim Walter Homes, Inc. is marked out. No address for Mid-State is placed anywhere on the document. In the body of the mortgage Jim Walter Homes, Inc. is named as mortgagee. Apparently, Mid-State was not substituted in the body of the form mortgage when the other alterations were made. Thus, it is not at all clear on the face of the document whether plaintiff or Jim Walter Homes, Inc. is the true mortgagee.

Mid-State has instituted these proceedings claiming to be the second mortgagee and claiming a right to notice. However, evidence adduced by the defendants demonstrates not only that plaintiff's identity as a party in interest is clearly debatable on the face of the mortgage, but also that it would have taken extraordinary effort to locate Mid-State. Plaintiff is not listed in either the phone or city directories for Caddo Parish. Nor is Mid-State licensed to do business in the State of Louisiana. A certificate from the Louisiana Secretary of State reveals that inquiry in that office by the sheriff would not have revealed the location of, nor the address for, Mid-State Homes, Inc.

Neither *Mullane* nor *Mennonite* require that notice by mail be sent to a party whose identity and whereabouts are unknown. Therefore, plaintiff's status as an unknown and unlocatable mortgagee is an independent ground for finding no constitutional violation in this case. *See Bender, supra.*

Because this court finds that La.R.S. 13:3886 cures any defects in the constructive notice provisions of the Louisiana Code of Civil Procedure and because plaintiff falls within the exception to *Mullane* and *Mennonite* for unidentified parties, IT IS ORDERED that there be judgment in favor of defendants. A judgment consistent with the terms of this memorandum opinion shall issue herewith.