518 So.2d 563 (1987)
BANKERS LIFE COMPANY
v.
Pauline Regotti, Wife of/and John A. SHOST and Martha Johnson, Wife of/and Dewey Johnson.
No. 87-CA-284.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1987.
*564 Stephen G. Sklamba, Metairie, for defendant/appellant.
Before BOWES, WICKER, and GOTHARD, JJ.
WICKER, Judge.
This appeal arises from an action to rescind a sheriff's sale by Freedlander, Inc, The Mortgage People (Freedlander). Freedlander is the second mortgagee of immovable property which was seized following a suit by executory process on behalf of Bankers Life Company (Banker's), the first mortgagee. The property was and sold at a sheriff's sale to Deborah Triche (Triche). Freedlander sought to enjoin Harold L. Montegut, Jr., Clerk of Court for St. John the Baptist Parish, from recording the Sheriff's Proces Verbal Deed, and to restrain and enjoin Triche from alienating or encumbering the property. Freedlander also sought to have the sheriff's sale annulled. The trial court recognized the validity of the sale and denied Freedlander relief, ordering that the sheriff file the Proces Verbal and distribute the proceeds of the sale. From that adverse judgment Freedlander now appeals. We affirm.
On January 21, 1986, Bankers filed a petition for executory process against Pauline Regotti, wife of/and John A. Shost and Martha Johnson, wife of/and Dewey Johnson. Bankers was the holder by assignment of a promissory note in the original principal sum of $16,400.00 executed on May 1, 1963 by Pauline Regotti Shost and John A. Shost in favor of Carruth Mortgage Corporation. The May 1, 1963 note was secured by an act of mortgage recorded May 3, 1963 on the following described property:
That certain piece or portion of ground, together with all the buildings and improvements thereon, and all the rights, ways privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the State of Louisiana, in the Parish of St. John the Baptist, in Godchaux Community, Unit No. 1, Riverlands, being a resubdivision of a portion of Laplace Plantation, in Sections 24 and 25, Township 11 South, Range 7 East, Southeastern District, East of the Mississippi River, designated as Lot No. 150-B, bounded by Parlange Loop, Ellerslie Avenue, Chatsworth Drive, the east boundary of the subdivision, and a 100 foot drainage servitude, all in accordance with the survey of J.J. Krebs & Sons, dated March 11, 1963, which said lot commences at a distance of 138.72 feet from the first point of curvature of Parlange Loop into Ellerslie Avenue, and measures thence 60.01 feet front on Parlange Loop, by a depth along the side line nearer Ellerslie Avenue of 108.94 feet, by a depth along the opposite side line of 110 feet, by a width in the rear of 60 feet. Lot No. 150-B is composed of portions of original Lots Nos. 150 and 151.
Although Martha Johnson and Dewey Johnson did not execute the note, Bankers believed that they were the current owners of the property described above. The writ of seizure and sale was issued on January 23, 1986. It was served on all party defendants on February 6, 1986 in connection with Banker's suit for executory process.
*565 On August 31, 1984 Martha Cox, wife of/and Dewey Verrell Johnson, executed a promissory note in favor of Freedlander in the original principal sum of $123,770.40. The Freedlander note was secured by an act of mortgage on the above property which was recorded on September 5, 1984.
On January 24, 1986, Freedlander, in a separate proceeding instituted a suit for executory process against the Johnsons.
The sale of the property took place on Wednesday, March 26, 1986, at 11 a.m. The sale was advertised on February 20, and March 20, 1986. On March 26, 1986, the property was sold to Triche in the amount of $10,411.00.
Evidently Freedlander was aware of the Bankers' suit for executory process as well as the seizure and upcoming sheriff's sale. Freedlander, through one of its foreclosure administrators, was advised by an attorney for Bankers that the sheriff's sale was scheduled for April 2, 1986. Freedlander relied on that information and was not present for the sale. It then filed the present action to rescind the sale.
Freedlander now specifies the following errors:
1. That the trial court erred in failing to set aside the sale on the basis of the actions of the employee of the attorney for Bankers, such actions necessitating that the sale be declared null pursuant to L.S.A.C.C. Art. 2619;
2. That the trial judge erred in failing to conclude that the sale was null since it was not conducted at 11 a.m. rather than at 10 a.m., as required by law;
3. That the trial court erred in failing to annul the sale since Triche did not pay the purchase price timely in accordance with Louisiana law, and
4. That the trial court erred by failing to conclude that Freedlander's failure to receive notice of the sale violated due process.
FRAUD:
Freedlander contends that the sheriff's sale should be annulled due to fraud by Bankers in failing to reveal to Freedlander the correct date of the sheriff's sale.
The testimony at trial regarding the allegations of fraud set out the following: Donna Turner (Turner), a foreclosure representative employed by Freedlander, testified that she called Radar Jackson, attorney for Bankers, and instead reached his brother, Attorney Craig Jackson (Craig). Craig advised her that the sheriff's sale would take place on April 2. When Turner was then asked regarding any notes taken in connection with her work, Triche's counsel objected on the grounds of hearsay. Neither Rader Jackson nor Craig testified. The trial judge sustained the objection regarding Turner's notes.[1] Thereafter, Freedlander's counsel proffered Turner's notes and questioned her regarding these. He does not raise on appeal the trial court's refusal to allow the notes into evidence.
Turner further testified that it was customary for Freedlander to contact first mortgage holders in order to ascertain the status of the first mortgage. She indicated that she had contacted Mr. Jackson's office on other occasions and had always been given the correct date.
However, on April 2 she learned that the sale had already taken place on March 26. When she spoke to Mr. Jackson about the discrepancy in the dates, he told her that he was sorry for the "mixup."
Freedlander does not seek damages from Bankers, instead it seeks to have the sheriff sale annulled.
As explained in Ellerd v. Williams, 404 So.2d 1271, 1273 (La.App. 2nd Cir.1981):
A final judgment can be annulled if it was obtained by fraud or ill practices. L.S.A.-C.C.P. art. 2004 [footnote omitted]. A sheriff's sale pursuant to judgment ordering executory process is subject to annulment for fraud or ill practices *566 by the creditor and adjudicates where no third rights have intervened.
Fraud is defined in L.S.A.-C.C. art. 1953 as:
a misrepresentation or a suppression of truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
Furthermore, as provided by L.S.A.-C.C. art. 1957:
Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence.
Freedlander asserts that the furnishing of the incorrect date prevented it from appearing at the sale and thus constituted fraud. However, there is no evidence indicating that Bankers, through its attorney, intentionally gave the incorrect date of the sale "either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." L.S.A.-C.C. art. 1953. Instead, Turner testified that Bankers' attorney apologized to her for the "mixup." No one disputed the statement that it was a "mixup" and not intentional. Thus, the trial judge's conclusion that no fraud occurred is amply supported by the record. Therefore, we find no manifest error. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Freedlander also argues that the sheriff's sale should be annulled pursuant to L.S.A.-C.C. art. 2619, which provides that:
Whatever may be the vices of the thing sold on execution, they do not give rise to the redhibitory action; but the sale may be set aside in the case of fraud, and declared null in cases of nullity.
More specifically, Freedlander argues that the action by Bankers resulted in a "chilling" of the sale in that it prevented competition among the bidders.
Recently, the court in Boyd v. Farmer-Merchants Bank & Trust Co., 433 So.2d 339, 342 (La.App. 3rd Cir.1983), writ denied, 440 So.2d 732 (La.1983), explained:
As a general rule, a judicial sale cannot be attacked once the sale is consummated in the absence of fraud or ill practices. The reason for this rule is that, once the property has been transferred to an innocent third party, such party should be secure in his title. Jambois O. & M. Machine Shop, Inc. v. Dixie Mill Sup. Co., Inc., 218 So.2d 672 (La.App. 4th Cir.1969). Cf: Pease v. Gatti, 202 La. 698, 12 So.2d 684 (1942).
[Quoting Konen v. Konen, 165 La. 288, 115 So. 490, 491 (La.1928).] `One of the objects of sales at public auction is to obtain a fair price for those interested in the proceeds of the property. This is said to be the great object of rules regulating such sales. Hence the concealment or misrepresentation of facts, amounting to fraud, is not the only cause for annulling a judicial sale, but anything said or done by one who becomes an adjudicatee, for the purpose of preventing competition at the sale, or, in other words, for the purpose of chilling it, which is reasonably capable of doing so, and has that effect, will be sufficient to annul the sale. Swain v. Kirkpatrick Lumber Co., 143 La. 30, 78 So. 140 [1918], 20 A.L.R. 665, 2 R.C.L. Section 16, p. 1131.'
In the instant case, the property was purchased by an innocent third party who did nothing to "chill" the sale or to prevent competition. Additionally, there is no showing of fraud or ill practices on the part of Bankers to "chill" the sale by preventing Freedlander from bidding on the property. Therefore, we find no error in the trial court's obvious conclusion that Bankers' providing an incorrect date was not fraud "per se" or ill practices "per se" sufficient to nullify a sale pursuant to L.S. A.-C.C. art. 2619. His finding is supported by the record. Arceneaux, supra.
L.S.A.-R.S. 13:4341 AND 13:4359:
Freedlander also contends that the sheriff sale should be annulled since (1) it began at 11 a.m. rather than at 10 a.m. as mandated by L.S.A.-R.S. 13:4341, and (2) the purchaser did not tender to the sheriff 10% of the purchase price at the time of the sale as required by L.S.A.-R.S. 13:4359.
*567 The record indicates that the property was advertised and the sale conducted beginning at 11 a.m. rather than 10 a.m. as provided in L.S.A.-R.S. 13:4341, which states in pertinent part:
All public sales by auction, the parish of Orleans excepted, [s]hall be advertised to take place [b]eginning at ten o'clock A.M.
In addition, the record also indicates that the purchaser did not pay 10% of the purchase price at the time of the adjudication but instead paid the entire balance by certified check that afternoon. L.S.A.-R.S. 13:4359 provides in pertinent part:
In all judicial sales when the terms of the sale are not fixed in the writ, judgment, or order of sale, before the advertisement the party provoking the sale may instruct the officer conducting the sale as to what portion of the purchase price is to be paid at the moment of adjudication. In default of such instruction, the officer may fix the amount, which in no case shall be less than ten per cent.
While L.S.A.-R.S. 13:4341 does not indicate the effect of a failure to conduct the sale beginning at 10 a.m., L.S.A.-R.S. 13:4360 does indicate the effect of a failure to pay a deposit.
L.S.A.-R.S. 13:4360 provides in pertinent part:
If the terms of the sale provide for full payment of the adjudication price at the moment of the adjudication, or if the terms provide for a deposit, and the purchaser fails to make such full payment or deposit, the seizing creditor may direct the officer conducting the sale either to re-offer the property immediately, or re-advertise the property for sale[.] [Emphasis supplied.]
Thus, the seizing creditor, Bankers, has the discretion to re-offer the property for sale immediately or to have it re-advertised. Since Freedlander was not the seizing creditor it did not have these options available.
With regard to the discrepancy in time, we note that this discrepancy as well as the violation of L.S.A-R.S. 13:4359 are procedural errors which do not "strike at the foundation of the creditor's right to use executory process." Brown v. Everding, 357 So.2d 1243, 1249 (La.App. 2d Cir.1978).
L.S.A.-R.S. 13:4112 provides:
"No action may be instituted to set aside or annul the judicial sale of immovable property by executory process by reason of any objection to form or procedure in the executory proceedings, or by reason of the lack of authentic evidence to support the order and seizure, where the sheriff executed the foreclosure has either filed the proces verbal of the sale or filed the sale for recordation in the conveyance records of the parish. Any party seeking to annul or set aside a judicial sale of immovable property through executory proceedings filed for record before the adoption of this Section must do so within six months of September 12, 1975. Nothing herein shall be construed to affect legal defenses otherwise available to any person against whom a deficiency judgment is sought after the public sale of immovable property through executory proceedings."
Recognizing that the recordation of the proces verbal by the sheriff would cure procedural defects in the executory proceeding, Freedlander sought and obtained a temporary restraining order, restraining the sheriff from filing the proces verbal and prohibiting the clerk of court from recording it. In its petition, Freedlander sought a preliminary injunction; it did not seek a permanent injunction.
After hearing, the trial judge dissolved the temporary restraining order and specifically ordered the sheriff to file the proces verbal. Freedlander did not cite or brief as error the trial court's refusal to grant a preliminary injunction as prayed. It did not ask for a stay. Therefore, Freedlander has not preserved the issue of the denial of the injunction on appeal. Freedlander, by acquiesing to the filing of the proces verbal has in effect abandoned its argument that the sale should be annulled on procedural grounds.
DUE PROCESS:
Freedlander contends that the sheriff's failure to notify it of the date of the sale *568 and instead relying on Freedlander's having received constructive notice through newspaper advertisement constituted insufficient notice violative of due process. U.S. C.A. Const.Amend. 14. Freedlander correctly notes that its address was easily obtainable from its recorded mortgage. In addition, the inscription of the Freedlander mortgage appeared on the mortgage certificate procured by the sheriff in connection with Bankers' foreclosure.
In Mid-State Homes, Inc. v. Portis, 652 F.Supp. 640, 644-45 (W.D.La.1987), the court considered sufficiency of notice to a second mortgagee and analyzed recent United States Supreme Court decisions as follows:
The seminal cases on the constitutional sufficiency of judicial notice are Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed.2d 865 (1950), and Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). The Mullane court noted that `[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.' 70 S.Ct. at 656-57. Since `process which is a mere gesture is not due process' and since the `right to be heard has little reality or worth unless one is informed that the matter is pending,' the notice required by the Due Process Clause must be `reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' Id. at 657.
The Mullane court held that a New York trust statute which provided only for constructive notice to beneficiaries of the trustee's petition for settlement violated the Due Process Clause as applied to interested parties whose names and addresses when known to the trustee bank. Id. at 660[.]
Thirty-three years later in Mennonite, the Supreme Court returned to the subject of the sufficiency of notice in judicial proceedings. At issue in Mennonite was the constitutionality of the Indiana tax sales procedures which gave no notice to mortgagees of the pending sale for delinquent taxes. The mortgagee in that case did not discover that the mortgaged property had been sold until after the redemption period had passed and the tax sale purchaser brought an action to quiet title. The Mennonite court held:
When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane.

103 S.Ct. at 2711. The sophistication of the creditor did not affect the state's obligation to provide a constitutional form of notice. Id. at 2712. Nevertheless, the state is not required `to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public records.' Id. at 2711 n. 4.
Freedlander, as a second mortgagee had a significant property interest in the property sold at the sheriff's sale. Such an interest is constitutionally protected. Mid-State, supra, and the cases cited therein.
The record indicates that the amount received at the sheriff's sale was grossly insufficient to cover Freedlander's inferior mortgage. Triche, the purchaser, was only required to pay the purchase price. L.S. A.-C.C.P. art. 2375. In addition, she receives from the sheriff a release from all mortgages. L.S.A.-C.C.P. art. 2376. Therefore, pursuant to L.S.A.-C.C.P. arts. 2375 and 2376, Freedlander's security interest was eliminated. Therefore, Freedlander was entitled to notice and an opportunity to be heard. Mullane, supra, and Mennonite, supra.
*569 The constructive notice by publication is insufficient notice to Freedlander whose name and address were easily obtained through its recorded mortgage. Mullane, supra, and Mennonite, supra. However our Louisiana legislature has provided a statutory method by which any person can be assured of receiving notice. L.S.A.-R.S. 13:3886 provides:
A. Any person desiring to be notified in the event specific immovable property is seized shall file a request for notice of seizure in the mortgage records of the parish where the immovable property is located. The request for notice of seizure shall state the legal description of the immovable property, the owner of the property, and the name and address of the person desiring notice of seizure. The person desiring notice of seizure shall pay the sum of ten dollars to the sheriff, for deposit in the sheriffs' general fund, to defray the cost of providing the notice of seizure in the event said property is seized.
B. In the event of seizure of immovable property, the sheriff shall request from the clerk of court, or the recorder of mortgages for the parish of Orleans, a mortgage certificate at least twenty-one days prior to the sheriff's sale. The mortgage certificate shall include any requests for notice of seizure. Upon receipt of the mortgage certificate the sheriff shall notify, at least ten days prior to the sheriff's sale, those persons requesting notice of the seizure. The notice of seizure shall be by certified mail or actual delivery and shall include the name and address of the seizing creditor, the method of seizure and the sum owed, and the date of the sheriff's sale.
C. Neither the clerk of court nor the sheriff, or any of their officers, agents, or employees, shall be held liable if a reasonable attempt has been made to mail or deliver the notice to the address provided in the request.
D. The failure of the sheriff to notify a person requesting notice of seizure shall not affect the rights of the seizing creditor nor invalidate the sheriff's sale.
We follow the holding in Mid-State, supra, which concludes that L.S.A.-R.S. 13:3886 "which gives notice to creditors or anyone for that matteronce they have identified themselves and paid a nominal fee passes constitutional muster." Id. at 645.
It is not disputed that Freelander gave no notice pursuant to L.S.A.-R.S. 13:3886. Therefore, it cannot now complain that it did not receive notice from the sheriff of the date of the sale. The trial judge correctly held that Freelander could have protected its interest by complying with the statute.
Accordingly, for the reasons stated the judgment of June 20, 1986 is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] At a later date, however, one of the notes was introduced into evidence without objection. It was a memo from Turner to Freedlander's attorney dated February 19, 1986 advising him of the sale date of April 2, 1986 as told to her by Craig on that date.