KING, Judge.
The sole issue presented by this appeal is whether or not the vendor breached its warranty to provide unencumbered title to immovable property which it sold.
Robert and Cheryl Randalls Dossett (hereinafter plaintiffs) filed suit on October 16, 1985 against Hub City Bank & Trust Company (hereinafter defendant), alleging that the title to immovable property conveyed to them by the defendant was encumbered with judicial mortgages. Plain *598 tiffs demanded rescission of the contract of sale, restitution of the purchase price, damages, and attorney’s fees. In a second supplemental and amending petition, Kansas City, Fire and Marine Insurance Company (hereinafter Kansas City), the defendant’s insurer, was also made a defendant in the case. At all times relevant to these proceedings, the defendant had in full force and effect a policy of liability insurance issued by Kansas City. Thereafter, the Federal Deposit Insurance Corporation (hereinafter FDIC) was substituted as party in interest for defendant, because of its appointment as receiver and liquidator of the defendant pursuant to La. R.S. 6:391(C). On plaintiffs’ motion, the FDIC was later dismissed from the case without prejudice. The case then proceeded to trial against Kansas City before a jury which found that defendant had not breached its duty to provide the plaintiffs with unencumbered title to the property it sold to them. The trial court signed a formal written judgment, making the jury verdict the verdict of the court and dismissing plaintiffs’ suit with prejudice. This timely de-volutive appeal followed. We affirm.
FACTS
Jack and Cynthia Johnstone acquired title to immovable property, consisting of a residential lot and its improvements (hereinafter the property), in a subdivision known as The Settlement in Lafayette Parish, Louisiana. On April 18, 1983, the Johnstones executed a collateral mortgage upon the property to secure an indebtedness to the defendant. This collateral mortgage was properly recorded in the mortgage records of Lafayette Parish, Louisiana. Subsequent to the recordation of the Johnstone mortgage in favor of the defendant, two money judgments were rendered in favor of W.A. Krueger Co. and Moran Colorgraphic, Inc. and against the Johnstones in Lafayette Parish, Louisiana and both judgments were properly recorded in the mortgage records of Lafayette Parish, Louisiana. These two recorded money judgments created judicial mortgages (hereinafter the inferior judicial mortgages) by operation of law on the property.
The Johnstones defaulted on their debt to defendant who then instituted executory foreclosure proceedings on its collateral mortgage. Pursuant to the writ of seizure and sale which was issued in the executory foreclosure proceeding, the Sheriff of Lafayette Parish, Louisiana sold the property at the Sheriff’s sale to the defendant, as the seizing creditor, on March 7, 1984. Subsequently, the Sheriff's deed of sale was recorded and the Sheriff ordered the Clerk of Court of Lafayette Parish, Louisiana to cancel any and all judgments and judicial mortgages inferior to the mortgage of the defendant to the extent that they affected the property. There is no dispute that the inferior judicial mortgages, insofar as they affect the property, were cancelled from the mortgage records.
Plaintiffs purchased the property from defendant by warranty deed, dated December 6,1984, in consideration of a cash price of $150,000.00. Commerce and Energy Bank of Lafayette provided plaintiffs with $156,301.03 in interim financing to fund their purchase of the property. Lafayette Building Association (hereinafter LBA) then extended a conditional commitment to plaintiffs for permanent financing for $190,000.00 over thirty years at 11% interest. LBA hired an attorney, William Mouton, to examine the title to the property for the purpose of obtaining a title opinion in connection with obtaining a mortgage on the property to secure its commitment for permanent financing. Mouton, an attorney experienced in title and foreclosure law, discovered during his examination of title for LBA that no notices of the Sheriff’s Sale had been given to the inferior judicial mortgage holders in connection with defendant’s executory foreclosure proceedings on the property. For this reason he found title to the property not merchantable, as suggestive of litigation, and advised the LBA to withdraw its conditional commitment to plaintiffs for financing, due to the United States Supreme Court decision rendered in the case of Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), unless satisfac *599 tory curative work to the title to the property could be obtained.
It is uncontroverted that the inferior judicial mortgage holders were not given notice of the Sheriff’s Sale of the property by the receipt of a letter; that they did not request such notice pursuant to La. R.S. 13:3886; and that their addresses did not appear from their inferior judicial mortgages recorded in the mortgage records of Lafayette Parish, Louisiana.
The defendant was contacted in an effort to comply with the title curative requirements of Mouton, but the document produced to correct the alleged defects in title did not satisfy his title curative requirements.
The plaintiffs ultimately sold the property for $120,000.00, after obtaining releases from the inferior judicial mortgage holders of the Johnstones. Plaintiffs then filed this suit to rescind the sale of the property and obtain restitution of the purchase price, damages, and attorney’s fees. Subsequently, the defendant went into receivership and the FDIC was substituted as the party in interest for the defendant. The plaintiffs later dismissed their suit without prejudice against the FDIC and the defendant proceeded to trial only against Kansas City.
The defendant’s attorney testified that in his opinion the Mennonite case was not applicable under Louisiana law to exec-utory foreclosure proceedings under the facts of the case and that title to the property was merchantable. Mouton testified that, in his opinion, the Mennonite case was applicable and because of this, title to the property was not merchantable. The jury was thus presented with two conflicting opinions regarding the applicability of the Mennonite case to the facts of this case.
Plaintiff appealed assigning error of the jury in (1) finding defendant did not breach its duty to provide them with an unencumbered title to the property; (2) finding that defendant’s failure to provide them with unencumbered title to the property was not an invasion of their right of private occupancy; and (3) in failing to award them damages. Finding that the disposition of assignment of error number one is disposi-tive of this appeal we will not discuss the other assignments of error.
LAW
Plaintiffs contend that defendant breached its warranty to provide unencumbered title to the property because notice of the Sheriff’s Sale had not been given to inferi- or judicial mortgage holders during the ex-ecutory foreclosure proceedings where the defendant acquired title to the property. Plaintiffs rely on the Mennonite decision, supra, in support of their legal position that title to the property is still encumbered by the inferior judicial mortgages. Plaintiffs contend that the - rights of the inferior judicial mortgage holders to the property are still enforceable against the property, because the inferior mortgage holders did not receive notice of the Sheriff’s Sale in the defendant’s executory foreclosure proceeding. For this reason, plaintiffs contend that defendant breached its warranty contained in the sale of the property to them.
A seller is bound to two principal obligations, that of delivery and that of warranting the thing he sells. La.C.C.Art. 2475. Plaintiffs do not contend that defendant did not deliver the property to them. The warranty of the seller has two objects, that of peaceable possession of the thing sold and that the thing sold is free of redhibitory defects or hidden defects. La. C.C.Art. 2476. Plaintiffs do not contend that their possession of the property has been interrupted. The record is clear that the inferior judicial mortgages have been cancelled from the mortgage records insofar as they affect the property. Plaintiffs urge that the legal right of the inferior judicial mortgage holders to bring suit against the property is still available and that these legal rights are hidden defects to the title to the property. For this reason plaintiffs contend that defendant breached its warranty to sell them the property free of hidden defects.
In Mennonite, a mortgage was executed in favor of the Mennonite Board of Mis *600 sions. Under the terms of the mortgage, the mortgagor was responsible for paying all property taxes. Without the Board’s knowledge, the mortgagor failed to pay the property taxes. The county initiated proceedings to sell the mortgagor’s property for the property tax arrearages by posting and publishing notice of the pending tax sale. Notice of the pending tax sale was given to the Board through certified mail, but the Board never actually, received the letter giving notice of the pending tax sale. Adams purchased the property at the sale and filed suit to quiet title in the Indiana State Courts. The U.S. Supreme Court reversed the state district and appellate courts, holding that only those means certain to ensure actual notice or actual notice received by mail together with constructive notice under provisions of law concerning judicial sales meets the minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party. The Supreme Court held that the posting and publishing of notice of the pending tax sale, together with the attempted notice of the pending tax sale by certified mail to the mortgagee which was not received, did not meet the minimum established requirements of due process to deprive the Board of its property rights as a mortgagee.
The events in the Mennonite case occurred before and during 1979. In 1980, § 6-1.1-24-4.2 (1982) was added to the Indiana Code. This statute provided "... for notice by certified mail to any mortgagee of real property which is subject to tax sale proceedings, if the mortgagee has annually requested such notice and has agreed to pay a fee, not to exceed $10, to cover the cost of sending notice.” Id,., 103 S.Ct. at page 2708, n. 2. The Supreme Court noted the enactment of this statute in Mennonite, but declined to comment upon its constitutionality as it was not in effect when the property was sold at tax sale. Id.
La.R.S. 13:3886(A), added to our law in 1982, is similar to the Indiana statute cited above and provides:
“§ 3886. Request for notice of seizure on specific property; notification by sheriff; failure to notify
A. Any person desiring to be notified in the event specific immovable property is seized shall file a request for notice of seizure in the mortgage records of the parish where the immovable property is located. The request for notice of seizure shall state the legal description of the immovable property, the owner of the property, and the name and address of the person desiring notice of seizure. The person desiring notice of seizure shall pay the sum of ten dollars to the sheriff, for deposit in the sheriffs’ general fund, to defray the cost of providing the notice of seizure in the event said property is seized.”
In Mid-State Homes, Inc. v. Portis, 652 F.Supp. 640 (W.D.La.1987), the court held that La.R.S. 13:3886 adequately protects the constitutionally required right of an inferior mortgage holder to be provided notice of a judicial seizure and sale, when considered in pari materia with the provisions of La.C.C.P.Art. 2638 and 2331 providing for constructive notice by publication to an inferior mortgage holder. In the Portis case the court stated:
“Standing alone, the constructive notice provided by the publication of the proposed sale of property under the Louisiana Code of Civil Procedure does not meet the minimal requirements of the Due Process Clause. Such notice is not ‘reasonably calculated’ to apprise those with security interests in the property of the pending judicial sale and the potential loss of their mortgage, lien, or privilege. See Mullane [Central Hanover Bank & Trust Co.], [339 U.S. 306] 70 S.Ct. [652] at 657 [94 L.Ed. 865]. As the Mennonite court noted ‘[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of any party_’ 103 S.Ct. at 2712. However, the constructive notice provisions of the Louisiana Code of Civil Procedure do not stand alone. They must be construed in pari materia with *601 the Louisiana Revised Statutes which supplement the Code. La.R.S. 13:3886 provides a statutory method by which any person may obtain notice by mail of the seizure of specified property upon payment of a ten-dollar fee.
Although the Mennonite analysis has been characterized as ‘slightly more rigorous’ than that of Múlleme, at least one court has concluded that ‘the basic flexibility of the Mullane standard has not been discarded.’ Bender v. City of Rochester, 765 F.2d 7, 10-11 (2d Cir. 1985). Viewed in this light, the Louisiana system which gives notice to inferior creditors-or anyone for that matter-once they have identified themselves and paid a nominal fee passes constitutional muster.” Mid-State Homes, Inc. v. Portis, 652 F.Supp. 640, at page 645 (W.D.La. 1987).
See also Wong v. E. Baton Rouge Sheriffs Office, 522 So.2d 1134 (La.App. 1 Cir.1988), writ den., 523 So.2d 863 (La.1988); Bankers Life Co. v. Shost, 518 So.2d 563 (La. App. 5 Cir.1987).
The provisions of the Louisiana Code of Civil Procedure regarding constructive notice by publication of a pending Sheriff’s Sale of property has been found to provide adequate constitutional protection to inferi- or mortgage holders when considered in pari materia with the provisions of La.R.S. 13:3886. It is not disputed that the inferior judicial mortgage holders did not request notice, pursuant to La.R.S. 13:3886, before the Sheriff’s Sale of the property. For these reasons, the plaintiffs cannot now complain that the failure to give notice of the Sheriff’s Sale of the property creates legal rights in these inferior judicial mortgage holders which cause a breach of the warranty contained in the act of sale of the property from defendant to plaintiff. We find that the trial court was correct in adopting the jury’s verdict that the defendant did not breach its duty to provide plaintiffs with unencumbered title to the property. The jury was not manifestly in error or clearly wrong in its finding of fact nor was the trial court manifestly in error or clearly wrong in dismissing the plaintiffs’ suit. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). Therefore, we affirm the judgment of the trial court. All costs of this appeal are taxed to plaintiffs-appellants.
AFFIRMED.